SARAH F. USEN *vs*. CHARLES W. USEN.

York.      Opinion, June 8, 1940.

*John P. Deering,*
*Maurice Caro,*
*George E. Gordon,* for plaintiff.
*Jacob H. Berman,*
*Edward J. Berman,*
*John W. Hill,* for defendant.

Sitting: Barnes, C. J., Sturgis, Hudson, Manser, Worster, JJ.

WORSTER, J. On exceptions and appeal in equity. This is a bill in equity brought by a woman residing in this state against her husband, alleged to be domiciled here, to restrain him from further prosecuting, in a chancery court in Florida, a libel for divorce brought by him against her, and now pending there. No other remedy is sought.

This is the second time these parties have been before us. The first time the appeal and exceptions were dismissed without prejudice, and the case remanded for further proceedings, because the record then presented appeared insufficient to confer jurisdiction on this Court to determine the issues raised. *Usen* v. *Usen*, 136 Me., 520, 11 A. (2d), 485.

The defendant challenged the right of the plaintiff to maintain her original bill, by a demurrer inserted in his answer. After the demurrer was filed, and before hearing thereon, paragraphs numbered 7, 8 and 9 of the bill were amended. No exceptions were taken to the allowance of the amendments, and no new demurrer was filed.

Objection cannot be made to an amended bill in equity by a demurrer to the bill in its original form.

As was said in *Witham* v. *Wing et al.*, 108 Me., 364, 81 A., 100:

"If they had wished to object to the amended bill by demurrer, they should have filed a new demurrer to the amended bill."

Defendant's exception to the overruling of his demurrer to the original bill cannot be sustained.

But the defendant did not rest his case here. After the demurrer was overruled there was a hearing on the amended bill, answer and evidence.

And thereafterwards it was ordered, adjudged and decreed:

"that the Bill of the Plaintiff, Sarah F. Usen, be and hereby is sustained; that a writ of injunction issue, permanently enjoining the defendant, Charles W. Usen, from prosecuting the action for divorce which is now pending in the Superior Court of the Eleventh Judicial Circuit in and for the County of Dade, Florida."

From this decree the defendant appealed.

An appeal from a final decree in equity calls for a review of the whole case, and the appellant is required to present to the appellate court the pleadings, orders, and "all evidence before the court below, or an abstract thereof, approved by the justice hearing the case . . ."; otherwise the appeal cannot be sustained. R. S., Chap. 91, Sec. 63; *Emery* v. *Bradley*, 88 Me., 357, 34 A., 167; *Redman* v. *Hurley*, 89 Me., 428, 36 A., 906; *Caverly* v. *Small et al.*, 119 Me., 291, 111 A., 300.

In the instant case, neither the "evidence before the court below" nor "an abstract thereof, approved by the justice hearing the case" has been presented.

Evidently counsel attempted to remedy this omission, for it is stated, among other things, in a stipulation signed by them and printed in the record, "that the findings of the Court shall be considered the evidence in the case," but this stipulation does not bear the approval of the sitting Justice.

On an appeal in equity, a signed agreement or stipulation of counsel as to what the evidence was at the hearing before the sitting Justice, unapproved, cannot be accepted as a substitute for "all evidence before the court below, or an abstract thereof, approved by the justice hearing the case . . . ," which is required by statute to be produced. *Sawyer* v. *White*, 125 Me., 206, 132 A., 421.

In the case last cited, the Court said:

"Counsel have evidently endeavored to make an agreed statement not certified by the sitting Justice take the place of a full record. If this was necessary through inability to procure a transcript of the testimony, the case falls within the *Stenographer Cases*, 100 Maine, 271. *Atwood* v. *New England Tel. & Tel. Co.*, 106 Maine, 539. Any abstract of the evidence before the court below must be approved by the Justice hearing the case."

Moreover, findings of a presiding Justice are not the evidence in a case, but only his conclusions from the evidence.

Therefore, since neither the evidence, nor an abstract thereof approved by the justice who heard the case, has been presented, the defendant's appeal is not properly before us, and must be dismissed.

The defendant, however, relies on the following exceptions:

"The Court, although finding that there were no property rights involved, sustained the Bill, ruling as a matter of law that a wife may bring a Bill in Equity against her husband even though no property rights are involved, to restrain her husband from proceeding in an action for divorce in another jurisdiction . . . and to the ruling of law on the part of the Court in sustaining the Bill, the Respondent, being aggrieved, respectfully claims an exception. . . ."

But exceptions to findings of fact by a sitting Justice in equity, and to rulings made below as to the legal effect of facts found, can only be considered when accompanied by the evidence or an abstract thereof, approved in the manner aforesaid (neither of which is before us) ; for without the evidence, the correctness of the findings of fact and the legal effect thereof cannot be determined. Therefore, it follows that the defendant's exceptions to such findings and rulings cannot be sustained.

The defendant, however, excepts to the ruling found in the final decree, sustaining the plaintiff's bill, and this exception must be considered as an exception to that decree.

Exceptions lie to the whole or a part of a final decree, under equity procedure in Maine, as regulated by statute. *Emery* v. *Bradley*, supra.

But, on exceptions to such final decree, the allegations in the bill must be accepted as stating the case presented, without right to the exceptor to dispute any statement of facts well pleaded, thus presenting for determination only the questions of law involved. *Emery* v. *Bradley*, supra.

In the case last cited, it was contended that "the only mode of obtaining a review by the law court of any part of the final decree is by appeal." But Emery, J., in the opinion, said:

"The equity procedure act, however, seems to contemplate exceptions to a final decree, whatever may be the general rule. . . . Of course, exceptions to any part of a final decree can only present a question of law. No questions of fact are open for consideration upon exceptions."

That a final decree in an equity case is limited by the allegations in the bill, and must be based thereon, is well settled. *Emery* v. *Bradley*, supra; *Stover* v. *Poole et al.*, 67 Me., 217; *Merrill et al.* v. *Washburn*, 83 Me., 189, 22 A., 118; See, also, *Buswell* v. *Wentworth et al.*, 134 Me., 383, at 391, 186 A., 803.

Moreover, such final decree must not only be limited by and based upon the allegations in the bill, but the decree must be supported by allegations sufficient in and of themselves to present a case entitling the plaintiff to the relief prayed for in the bill, and granted in the decree.

In considering an exception to a single clause in the final decree in *Emery* v. *Bradley*, supra, Emery, J. said:

"The question of law presented by the exception is evidently this: whether the plaintiff's bill contains allegations sufficient to support that clause of the final decree excepted to."

A like question is presented here, which must be determined by a consideration of the allegations set forth in the plaintiff's bill.

While to set forth the whole bill would serve no useful purpose, yet, even at the expense of extending the length of this opinion, the greater part of the bill must be printed in order to present the situation as it is alleged to be, and in order that the principles of law involved may be properly applied to the stated case. By a brief summary of parts of the bill, and quotations from other parts, the case presented by the amended bill may be stated as follows:

That the plaintiff and defendant were married in Boston in 1917 (or, as stated in the libel in the Florida case which is made a part of the bill, in 1907), and lived together in Old Orchard Beach, Maine, for twenty-two years previous to December, 1938, "when the defendant unjustly and without cause wrongfully and wilfully deserted the plaintiff, which desertion has continued up to" the date of the bill, April 11, 1939.

That "no children were born of said marriage."

That they "purchased property in the Town of Old Orchard Beach and constructed and established stores, cottages, apartments and places of amusement, all of which property is now owned by corporation called Usen Amusements, Inc. formed about the year 1931, of which the plaintiff is Treasurer and the defendant Presi-

dent and Manager, and in which the plaintiff and defendant each own four hundred ninety-nine shares."

That they "have had the care, supervision and management of the property, the renting of the stores, concessions, apartments and cottages, the management of a large roller coaster, theater, dance hall, roller skating rink and other property and amusements of varying kinds, the proper and successful management of which requires the full time, personal attention of both the plaintiff and defendant from the first of March to the first of December of each year, and during the balance of the year it is necessary for said Charles W. Usen and Sarah F. Usen to devote some of their time and labor to the care of the property necessary to be kept in good condition, and to make preparation for its operation during the coming season."

That on April 20, 1938, the defendant entered into a written contract with said corporation, which expires April 20, 1941, wherein he became "obligated to devote his entire time to the management of said business during the operating period and such time as is necessary for the successful operation of the business during the other portions of the year."

That about January 15, 1939, the defendant went to Florida, and about March 10, 1939, there was prepared and signed a libel for divorce in "the Circuit Court of the 11th Judicial Circuit of Florida in and for Dade County, in Chancery, praying for a divorce from the plaintiff and alleging as grounds for divorce that the plaintiff had been guilty of violent and ungovernable temper and extreme cruelty, the latter ground only being a ground for divorce in the State of Maine." And on March 27 of that year an attested copy of said libel "together with a summons to appear and defend said bill, was served upon the plaintiff in said Old Orchard Beach."

That "the causes for divorce, as alleged in said libel for divorce . . . are false and without foundation."

It is further stated in the amended bill that:

"NINTH: The plaintiff and the defendant have never resided in the State of Florida as husband and wife, and said Charles W. Usen is now and has always been a resident of the State of Maine, and domiciled therein since 1920, and has

falsely alleged in his bill for divorce that he has resided in Florida for more than ninety days previous to the filing of the bill, and the plaintiff further alleges that said Charles W. Usen has no property or other interests in the State of Florida, but that all of his business interests are in Old Orchard Beach in the County of York, and that he has falsely claimed his residence in the State of Florida for the sole purpose of obtaining a divorce from the plaintiff.

"TENTH: The plaintiff further alleges that until the very end of the year 1938, said Charles W. Usen urged the plaintiff Sarah F. Usen to file a libel for divorce against him in the State of Maine, and offered her large sums of money for alimony and expenses if she would proceed to obtain a divorce from him in this state and the said Sarah F. Usen refused to do so.

"ELEVENTH: The plaintiff further alleges that all of the controversies and troubles that have arisen between her and the said Charles W. Usen have resulted from her refusal to file a libel for divorce in the State of Maine, in accordance with his urgent request, as set forth in the preceding paragraph."

"THIRTEENTH: The plaintiff further alleges that although a decree of divorce in Florida under these circumstances might be void under the laws of this state, it would, if granted, cause her great pain and suffering, personal embarrassment and humiliation, would adversely affect her personal and property rights, and in every respect cause her an irreparable injury.

"FOURTEENTH: The plaintiff further alleges that in order successfully to contest said divorce, now pending in the Courts in Dade County, Florida, it will be necessary for her to spend large sums of money to pay counsel fees in Florida and to pay traveling and other expenses of herself and her witnesses.

"FIFTEENTH: The plaintiff has no plain, adequate and complete remedy at law."

490

The bill concludes with a prayer for general relief, and that the defendant, his agents, attorneys and representatives be temporarily and permanently enjoined from "prosecuting, or causing to be prosecuted, the divorce proceedings now pending in the Circuit Court for the 11th Judicial District of Dade County, Florida," and that "the defendant be ordered to dismiss to cause to be dismissed, said divorce proceedings."

Do these allegations present such a case as entitles the plaintiff to the injunctive relief prayed for, and granted in the final decree?

It is a general rule that, upon a sufficient showing of facts, a court of equity in any state may enjoin a citizen of that state from prosecuting a suit against another citizen thereof, in the courts of a sister state. In such a case, equity acts *in personam* on the citizen of the state where the court issuing the injunction is located, and without any attempt to interfere directly with the courts of the sister state. 5 Pomeroy's Equity Jurisprudence, sec. 2091 ; 14 Ruling Case Law, p. 412, *et seq.*

This rule has been applied to prevent an evasion of the law of domicile (*Oates* v. *Morningside College,* 217 Iowa, 1059, 252 N. W., 783, 91 A. L. R., 563 ; *Pere Marquette Ry. Co.* v. *Slutz,* 268 Mich., 388, 256 N. W., 458 ; *Culp* v. *Butler,* 69 Ind. App., 668, 122 N. E., 684) ; to prevent great hardship and expense in defending in the sister state (*Kern et al.* v. *Cleveland C., C. & St. L. Ry. Co. et al.,* 204 Ind., 595, 185 N. E., 446) ; to prevent one citizen from obtaining an inequitable advantage over another (*Hawkins* v. *Ireland et al.,* 64 Minn., 339, 67 N. W., 73, 58 Am. St. Rep., 534) ; and where the suit in the other state would work great wrong and injury to others (*Columbian National Life Insurance Co.* v. *Cross* [Mass.], 9 N. E. [2d.]), 402, citing with approval *Dehon* v. *Foster,* 4 Allen, 545, 7 Allen, 57 ; *Cunningham et al.* v. *Butler et al.,* 142 Mass., 47, 6 N. E., 782).

The same rule is applied in divorce cases where both parties are domiciled in the same state, to restrain the libelant from further prosecuting divorce proceedings which have been commenced by him in a court of another state, based on his false allegation that he resided there. 2 High on Injunctions, sec. 1401a ; 5 Pomeroy's Equity Jurisprudence, sec. 2091 ; 9 Ruling Case Law, p. 523 ; 19 Corpus Juris, p. 106 ; *Kempson* v. *Kempson,* 58 N. J. E., 94, 43 A., 97 ;

*Kempson* v. *Kempson,* 61 N. J. E., 303, 48 A., 244 modified and affirmed in 63 N. J. E., 783, 52 A., 360, 625; *Huettinger* v. *Huettinger* (N. J. E.), 43 A., 574; *Von Bernuth* v. *Von Bernuth,* 76 N. J. E., 177, 73 A., 1049, 139 Am. St. Rep., 752; *Miller* v. *Miller,* 66 N. J. E., 436, 58 A., 188; *Forrest* v. *Forrest,* 2 Edm. Sel. Cas. (N. Y.), 180; *Gwathmey* v. *Gwathmey,* 190 N. Y. S., 199, aff. 193 N. Y. S., 935; *Greenberg* v. *Greenberg,* 218 N. Y. S., 87; *Johnson* v. *Johnson,* 261 N. Y. S., 523; *Jeffe* v. *Jeffe,* 4 N. Y. S. (2d), 628; See, also, *Cherry* v. *Cherry,* 253 Mass., 172, 148 N. E., 570; and *Borda* v. *Borda,* 44 R. I., 337, 117 A., 362.

And this jurisdiction has been said to rest

"... on the authority vested in courts of equity over persons within the limits of their own jurisdiction to restrain them from doing inequitable acts to the wrong and injury of others, and on the power of the state to compel its own citizens to respect its laws even beyond its own territorial limits. 14 R. C. L., pp. 412, 413." *Johnson* v. *Johnson,* supra; See, also, other cases cited above.

The *Kempson* cases hereinbefore cited are greatly relied on by the plaintiff. The principals in those cases were before the court three times. We are not, however, concerned here with that aspect of the second *Kempson* case which deals with the sufficiency of service of notice on the defendant that an injunction had been issued against him; or with the punishment inflicted upon him for his violation thereof.

Here we are primarily concerned with the right of the court to issue the injunction in the first instance. It was held in the first *Kempson* case, as stated in one of the headnotes, that:

"A complaint by a wife alleging that her husband, whose residence was in New Jersey, had gone to North Dakota, and, after a pretended residence there for a few months, commenced a suit against her for divorce, presents a case so inequitable as justifies a court of equity in the former state restraining its prosecution."

And it was there advised that injunction issue against the defendant, but, in spite of the injunctive order, Mr. Kempson proceeded

with his suit in North Dakota, and there procured a divorce.

Subsequently, at a hearing on a motion of his wife (the second case), he was found guilty of contempt in disobeying the injunction, and was ordered to pay a fine and to "take proper and efficient methods to open and set aside the decree. . . ." But, since the defendant had no power, himself, so to do, the order was modified by a divided court on appeal (the third case), by requiring him to present the truth to the North Dakota court, and to urge in good faith that its decree be set aside.

The defendant in the instant case, however, earnestly contends that the *Kempson* cases are not in point, because in those cases children and property were involved, whereas in the case at bar there are no children, and no questions involving property rights are at issue. And he argues that since there are no property rights at issue here, the plaintiff cannot maintain this bill against him.

But the bill before us sets forth quite fully the property interests of the parties, from which may be drawn the inference that the business success of each of them depends upon the success of the corporation which has acquired the property of each, and in which they are equal shareholders. Moreover, the plaintiff's bill contains a direct allegation that if the divorce should be granted in Florida, it "would adversely affect her personal and property rights, and in every respect cause her an irreparable injury."

And it is difficult to conceive of a divorce case between parties each of whom owns such a large number of shares of stock in a corporation carrying on such a large business as this one, and possessing so much real and personal property, in which property rights would not, at some time, be involved. See *Henry* v. *Henry*, 104 N. J. E., 21, 144 A., 18; and *Holmes* v. *Holmes*, 63 Me., 420.

However, even if it should be considered that the bill does not set forth a case calling for the assistance of the equity court at this time, to preserve the separate property of the plaintiff, yet that would not render the *Kempson* cases inapplicable.

The fact that the Kempsons had both children and property was not the basis of the decision rendered there. Those cases were not decided on the issue of children and property, but, as stated in the first *Kempson* case:

"In the case in hand the complainant's right to relief *rests solely* upon the ground that the conduct of her husband while domiciled in New Jersey, in going to Dakota and gaining a nominal or pretended residence there for a few months, and commencing a suit against her there based on such pretended residence, is so far inequitable and unjust as to merit the interference of a court of equity." (The underscoring is ours.)

So, since the *Kempson* cases were not decided on issues concerning children or property, but solely on the presented issue of injustice to and hardship on the plaintiff, arising from the fraudulent conduct of the defendant, (which is exactly what the plaintiff in the instant case claims she has shown in her bill), it follows that the issue decided there is like that presented here. A case is always in point if the ground upon which decision is actually made and stated in the opinion is the same point presented for decision in the case under consideration. The *Kempson* cases are, therefore, in point.

Nor do those cases stand alone. The principle there laid down is supported by other cases cited above with the *Kempson* cases.

Now, since questions of fact cannot be controverted in the instant case for reasons above stated, decision must be made on the case presented by the plaintiff in her bill, although the allegations will not be considered in the order in which they appear therein.

It appears from the bill that the defendant, having a residence in this state, brought a libel for divorce in a Florida court, against this plaintiff, also a resident of this state, based on his false allegation that he resided in Florida.

If a libelant makes a false allegation that he resides at a place within the jurisdiction of the court in which his libel is filed, for the purpose of conferring jurisdiction upon that court, especially in a case where his residence there is absolutely necessary for jurisdictional purposes, that constitutes fraud. *Kempson* v. *Kempson* (first case), supra; *Holmes* v. *Holmes*, supra.

And it has been said that such fraud is sufficient ground for injunctive relief. In 9 Ruling Case Law, page 523, the rule is laid down as follows:

"It has been held that if the husband and wife have their matrimonial domicile within the state where she resides, she

may there enjoin him from prosecuting a suit for divorce in another state based on a false allegation of his residence in that state, . . ."

Moreover, in such circumstances, a libel for a divorce brought in a court of a distant state, by a resident of this state against another resident thereof, causes such unusual hardship to the libelee, and calls for such an expense on her part in order for her to make her defense in the state where the libel is pending, as to render the suit there a harassing and vexatious one.

In *Gwathmey* v. *Gwathmey*, supra, on bill in equity brought by the wife, the husband was enjoined from further prosecuting in Florida a divorce proceeding he had there commenced against her, on the ground that he had not acquired the necessary residence there. Donnelly, J., there stated:

"This court has power to restrain him from carrying on an inequitable, harassing and vexatious suit in another jurisdiction . . ."

In *Von Bernuth* v. *Von Bernuth*, supra, the first *Kempson* case and the *Huettinger* case were referred to. In speaking of the *Kempson* case, Howell, V. C., said that the husband was enjoined

". . . from prosecuting a suit for divorce against his wife in a foreign state upon a satisfactory allegation of fraud, which consisted of the husband's allegation that he was a resident of such foreign state, whereas as a matter of fact he was a resident of New Jersey. In this case the jurisdiction was exercised upon the ground of fraud, and upon the further ground that the wife was put to the trouble and expense of appearing in a foreign state to resist her husband's claim, thus making the foreign proceeding a vexatious one."

The plaintiff here has brought her case within this rule by the allegation in her bill that:

". . . in order successfully to contest said divorce, . . . it will be necessary for her to spend large sums of money to pay counsel fees in Florida and to pay traveling and other expenses of herself and her witnesses."

So this bill presents not only a case of fraud on the part of the defendant in falsely alleging his residence in Florida, in order to give jurisdiction to the court there, but a case of hardship on the plaintiff, caused by the defendant's fraudulent conduct.

In commenting on the first *Kempson* case, which presented a like situation, it is stated in 33 Harvard Law Review, at page 92, that:

"In the much-discussed case of *Kempson v. Kempson*, the court granted an injunction, and properly so, since the facts disclosed not only hardship but also fraudulent conduct."

It is also alleged in the bill that this defendant "unjustly and without cause wrongfully and wilfully deserted the plaintiff, which desertion has continued up to this time."

It is further stated in the bill that "the causes for divorce, as alleged in said libel for divorce . . . are false and without foundation"; and that "although a decree of divorce in Florida under these circumstances might be void under the laws of this state, it would, if granted, cause her great pain and suffering, personal embarrassment and humiliation, would adversely affect her personal and property rights, and in every respect cause her an irreparable injury."

It is stated, in 2 High on Injunctions, section 1401a, that:

"Where a husband or wife leaves the state of their domicile and goes to a foreign state and there secures a mere nominal or colorable residence for the purpose of bringing divorce proceedings, such a case of injustice and irreparable injury is made out as to entitle the aggrieved spouse to an injunction restraining the other from prosecuting divorce proceedings in that state based upon such pretended domicile."

Even a void decree of divorce would necessarily affect the libelee. Undoubtedly it would cause not only confusion and uncertainty as to the status of both parties, but may well cause this plaintiff embarrassment, humiliation and suffering, as alleged, resulting in irreparable injury to her.

A valid decree of divorce necessarily carries with it the information that it has been judicially determined that the libelee has violated her marriage vows, and that, within the scope of the allegations in the libel, she has been found guilty of some wrong against

the libelant; but a void decree stamps "her name, it may be, with an unmerited disgrace." *Holmes* v. *Holmes*, supra. See, also, *Greenberg* v. *Greenberg*, supra; and *Johnson* v. *Johnson*, supra.

In *Forrest* v. *Forrest*, supra, the court said:

"It is manifest, from the facts as they are spread before me, that the defendant cannot obtain, in his suit in Pennsylvania, a decree which can be binding on his wife here. Would it be right to subject her unnecessarily to the harassing evils of even an invalid decree, or compel her to expend the allowance made to her by her husband, in resisting the granting of such a decree?"

The court, in *Jeffe* v. *Jeffe*, supra, says:

"To deprive the plaintiff of her status by fraudulent resort to a foreign jurisdiction; to impose upon her the burden of defending her rights in any part of the country which the defendant may select as a forum; to cast upon her the suspicion that she was guilty of a misconduct justifying a divorce in this state, all point to a direct and immediate invasion of her rights, to protect which equity will award injunctive relief . . ."

As pointed out by Mr. Greenleaf, it is

". . . essential to the peace of society that questions of this kind should not be left doubtful, but that the domestic and social relations of every member of the community should be clearly defined and conclusively settled and at rest." 1 Greenleaf on Evidence, sec. 525.

And if a divorce should be granted in Florida which would be valid there and void in Maine, so that the parties might lawfully remarry in one state and not in the other, the status of the parties would not only be definitely unsettled, but actually intolerable. *Johnson* v. *Johnson*, supra.

It further appears in the bill that the plaintiff and defendant are married; that they have never resided in Florida as husband and wife; that they lived together in Old Orchard Beach, Maine, for twenty-two years prior to December, 1938, when the defendant un-

justly deserted the plaintiff, and, about January 15, 1939, went to Florida, where he commenced said libel for divorce against his wife about March 10, 1939, which was served upon her the 27th day of the same month. The only reasonable inference to be drawn from this statement of facts is that the defendant seeks a divorce in Florida for causes alleged to have occurred in the State of Maine, while they lived here together as husband and wife. And since it also appears from the bill that the divorce proceeding is based upon his false allegation of residence in Florida, made for the sole purpose of obtaining a divorce there on grounds stated by the plaintiff in her bill to be false, the conclusion is irresistible that he sought thereby to gain some inequitable advantage over her, and, by evading the laws of this state, to procure a divorce in Florida which would be contrary to the public policy of this state.

As was said in *Johnson* v. *Johnson*, supra,

"For no apparent reason, except the gratification of his own desires, he is seeking to discard a wife who has done no wrong. He should not be permitted to consummate his scheme of evasion of the laws of his own state and place his aggrieved wife in a situation where she must defend herself against a judgment fraudulently obtained."

In a comment on the first *Kempson* case, in 15 Harvard Law Review, at page 145, is found this pertinent remark:

"The issue of the injunction seems justifiable in view of the fact that the result of the foreign suit would in all probability, as was intended, be an avoidance of the laws of the parties' domicil."

If a resident of this state goes to another state for the purpose of obtaining a divorce from his wife, who is also a resident of this state, for a cause which occurred here while the parties lived together here as husband and wife, that would be an evasion of the laws of this state, and against its public policy, and a divorce thus obtained would be regarded as void and of no effect in this state. 32 Corpus Juris., pp. 116, 117, 118; *Johnson* v. *Johnson*, supra; *Gregory* v. *Gregory*, 78 Me., 187, 3 A., 280, 57 Am. Rep., 792.

It is here provided by statute that:

"When residents of the state go out of it for the purpose of obtaining a divorce for causes which occurred here while the parties lived here, or which do not authorize a divorce here, and a divorce is thus obtained, it shall be void in this state. . ." R. S., Chap. 73, Sec. 12.

And in *Gregory* v. *Gregory*, supra, it was held that courts of other states have no authority to decree a divorce between citizens of this state.

The defendant, however, contends, in effect, that this court has no jurisdiction in this case, because full equity jurisdiction was granted to it in 1874, only "according to the usage and practice of courts of equity" at that time, and since no action could then have been maintained in equity by a wife against her husband, the statute cannot be construed so as to give this court jurisdiction of this case.

Full equity jurisdiction was conferred on this court by Chapter 175, Laws of Maine, 1874, and the provisions of that chapter, re-enacted in the various statutory revisions since that time, are now found in R. S., Chap. 91, Sec. 36, Par. XIV.

That paragraph reads as follows:

"And have full equity jurisdiction, according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law."

In construing this paragraph, the dual capacity of the court must always be borne in mind. At the time this statute was first enacted, this court was exercising limited equity powers, and at the same time had jurisdiction of actions at law, and this phrase was undoubtedly used to direct that the then newly granted "full equity jurisdiction" should be according to the usage and practice in equity, rather than according to the procedure followed in the same court in actions of law. It would be illogical and inconsistent to construe this phrase as a limitation on the full equity jurisdiction granted by the legislature. A granted power could not be both full and limited at the same time and in the same field.

Therefore, this phrase is not to be construed as a limitation on the grant of full equity jurisdiction, but, rather, as a direction as to the course of procedure to be followed. 1 Pomeroy's Equity Juris-

prudence (4th ed.), sec. 41 ; 1 Story's Equity Jurisprudence (13th ed.), p. 55, sec. 58 ; 4 Kent's Commentaries (14th ed.), p. 189, note.

This dual capacity of the court is clearly pointed out in section 41 of Pomeroy's Equity Jurisprudence, *supra*, where it is said :

"... in most of the states which have not adopted the reform procedure, the two departments of law and equity are still maintained distinct in their rules, in their procedure, and in their remedies ; but the jurisdiction to administer both systems is possessed and exercised by the same tribunal, which in one case acts as a court of law, and in the other as a court of equity. ... The procedure at law is based, ... upon the old common-law method, and retains in whole or in part the ancient forms of action. The equity procedure is the same in its essential principles with that which long prevailed in the English Court of Chancery, but is much simplified in its details and rules."

Nor is the full equity jurisdiction of this court limited by legislative acts conferring equity powers over certain special subjects, incorporated in statutes enacted before and after the grant of full equity jurisdiction to the court in 1874, or by a recital of the phrase "in all other causes."

In *Woodbury* v. *Gardner et al.,* 77 Me., 68, Virgin, J., said :

"In this state, the early equity jurisdiction of the court was limited to a very few subjects. It was gradually from time to time extended to others, until 1874, when the legislature conferred 'full equity jurisdiction according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law.' St. 1874, c. 175. And notwithstanding the clause — 'in all other cases,' the re-enactment of this statute in R. S., (1883) c. 77 § 6, was not intended to be limited in effect by reason of its being accompanied by a re-enactment of the various restricted provisions of the former statutes."

It is further urged for the defendant that the plaintiff is not entitled to relief in equity because she may appear in the Florida court and there defend the libel brought against her by her husband, and

so she has a plain, adequate remedy at law. This contention cannot be sustained.

One has no plain, adequate remedy at law if no remedy at law is afforded him in the domestic court of the state where he resides.

The rule is laid down in 19 Am. Jur., at page 115, as follows:

"A legal remedy, to be adequate, must be one which the domestic courts can apply and does not compel the party to go into the courts of a foreign jurisdiction to avail himself of it." In support of this statement is cited *Cummings ex rel. Eliott* v. *Lake Torpedo Boat Co.* (*State ex rel. Eliott & Co.* v. *Lake Torpedo Boat Co.*), 90 Conn., 638, 98 A., 580, L. R. A., 1916F., 1033.

In the case last cited, proceedings were had in a court in Connecticut, to compel the respondent to allow an inspection of the stock books and records of the defendant corporation, which had been organized under Maine laws. It was there argued that the plaintiffs "have an adequate remedy at law by proceedings in the State of Maine."

The court said:

"But such a remedy is not an adequate legal remedy. In *Stanton* v. *Embry*, 46 Conn., 595, 601, we said that a legal remedy to be adequate must be one which our own courts can apply, and does not compel the party to go into the courts of a foreign jurisdiction to avail himself of it."

This same rule has been applied in divorce proceedings. *Johnson* v. *Johnson*, supra.

One of the headnotes in the case last cited is as follows:

"That wife has legal defense to husband's contemplated divorce action in foreign jurisdiction does not defeat her right to enjoin action."

Moreover, even if the plaintiff had a plain, adequate remedy at law, that would avail the defendant nothing, because special jurisdiction has been conferred upon the court of equity in cases of fraud. R. S., Chap. 91, Sec. 36, Par. IV. See, also, 19 Am. Jur., p. 63, Sec. 39.

And the defendant's proceeding in Florida, which we are now considering, is based on fraud, from which it is claimed all of the hardship, inequity and injustice to the plaintiff flow.

In *Merrill* v. *McLaughlin et al.*, 75 Me., 64, at 69, Virgin, J., said:

"It is urged that the plaintiff has a plain, adequate and complete remedy at law, and that, therefore, this bill in equity cannot be maintained. But fraud being the gravamen of the complaint, equity and law have a concurrent jurisdiction with certain exceptions which do not include this case."

It is not necessary that it be made to appear that the injunction sought here is merely incidental to, or in aid of some other relief sought. *Henry* v. *Henry*, supra; *Gross* v. *Gross* (N. J. Chancery, 1935), 180 A., 204.

In the case last cited, it is stated in a headnote that:

"In proper case where matrimonial res is in state, bill will lie to enjoin proceedings for divorce in foreign jurisdiction, although such bill is not incidental to, or in aid of, any other relief."

The marriage state is frequently referred to as the "matrimonial res," as in the case last cited. *Delanoy* v. *Delanoy*, 216 Cal., 27, 13 P. (2d), 719, 86 A. L. R., 1321, at 1324; See Bishop on Marriage, Divorce and Separation, Vol. 1, Sec. 23, *et seq.*

Speaking from the angle of a judgment rendered in a divorce case, it is said, in 17 Am. Jur., at page 152, that:

"The res upon which the judgment operates is the status of the parties."

It has been claimed, however, that the "marriage res" is so intangible as to have no actual situs (1 Beale on Conflict of Laws, page 485); but, for the purposes of this case, it is not necessary to enter into a discussion of that phase of this topic, for there is no need to base our decision here on a matrimonial situs.

This court has jurisdiction over both the plaintiff and the defendant, and their marriage status.

And we are in no doubt as to what that marriage status is in this state.

It is said in 18 Ruling Case Law, at page 384, that:

"Some courts have gone to the extent of holding that marriage is not a contract but a status created by mutual consent of one man and one woman and that the rights and obligations of the parties are not contractual, but are fixed, changed or dissolved by law."

In support of that statement cases are cited, including *Gregory* v. *Gregory*, supra.

In the *Gregory* case, Emery, J., said:

"Marriage is a civil status. The rights and obligations of the parties are not merely contractual, but are fixed, changed or dissolved by law. In case of a conflict of laws, the lex domicilii controls the status of the person, though his contractual or property rights may be subject to other laws. The state has the absolute right to determine or alter the civil status of all its inhabitants. No matter where they may temporarily be, and no matter where the contracts or acts giving rise to such status may have been made or done. Other states or countries will in this matter accept without question the decrees of the courts of the home state. . . .

"But the state has this power only over its own inhabitants. The mere presence within its territory of the inhabitants of other states gives it no authority to fix or change their status. The state of their residence still retains its control over that. It alone can free its citizens from marital obligations. Any proceedings of another state to that end will be ineffectual and will be disregarded elsewhere."

There can be no question but that the public is greatly concerned in the marriage status or res, for that is the very foundation of our social structure. Not every one can enter into that status at pleasure, because of statutory regulations; and having entered into it neither one, nor both of the parties can, of themselves alone, dissolve it; but, for that purpose, must appeal to a competent court having jurisdiction of the parties, which, in turn, is limited to certain statutory causes.

And each person included in such marriage status has the abso-

lute right to insist that the status of which he or she is a part shall continue inviolate until dissolved by death or according to the law of the land. Moreover, that is one of the most important rights we have; and here that right of the plaintiff has been attacked by the defendant, by fraud.

Since the courts of this state alone can dissolve a marriage of its citizens dwelling within its borders, it follows that a divorce proceeding brought by one of its citizens against another, in a sister state, is contrary to law, and so an infringement not only on the rights of the spouse who has been sued, but also an infringement on the right of the state to determine the matrimonial status of its own citizens.

But the defendant strenuously contends that the common-law disability of a married woman has not been so far removed by statute as to permit the plaintiff to maintain such a proceeding as this against her husband; that she cannot invoke the statute permitting her to maintain a bill against her husband in connection with her separate property, because no such property is involved here; and so her bill should be dismissed.

We have not overlooked the Maine cases cited by the defendant, bearing on a married woman's incapacity to maintain an action at law against her husband for tort, or on contract, or for possession of property, or against his employer for damages for injuries caused by the husband's negligence. Those cases are not in point. This is not an action at law, and the wife is not seeking to recover damages or property.

Nor are those cases in point in which a court of equity dealt with the statutory right of a wife to maintain a bill in equity against her husband for protection of her separate property and rights, and matters arising therefrom; because no such relief is sought here.

It was said in *Henry* v. *Henry*, supra, that

"The notion that a court of equity is primarily concerned only with property rights is met by the circumstance that in this state the rights arising from a marriage contract necessarily embrace property rights."

But we pass this point, and the suggestion of our own court in *Holmes* v. *Holmes*, supra, relative to the effect of a divorce ob-

tained by fraud on the wife's right to support from her husband, and her right to what was then dower, now title by descent, in his estate upon his death; because the matter strikes deeper than those things. And the case may well be decided without even considering the effect of the statute giving to the wife a right to maintain a bill against her husband when her separate property is involved.

That statute does not, expressly or by implication, deny her the right to seek any relief in equity, on matters not covered by the statute, which she might have, if any.

The plaintiff does not seek here to compel the defendant to perform his marital duties, or to restrain him from improperly performing them, or to compel him to do any act whatsoever which requires any oversight in the performance thereof. She does not even seek to restrain him from bringing a divorce libel against her in the state in which they are both domiciled. All she seeks in this proceeding is to restrain him from further prosecuting against her in another state, where neither of them resides, a divorce case based on his false statement of his residence there, and in which no divorce could be granted that would be recognized as valid in the state where they live.

It cannot be that this plaintiff lacks capacity to seek relief here from such an intolerable situation as has been described, brought about by the defendant in a divorce action based on his own fraud, in which she would undoubtedly have capacity to defend on the ground of the same fraud complained of here, if she should be compelled to go to Florida to present her defense.

While, according to the fiction of the common law, a husband and wife were regarded as one person, yet they have been considered separate persons in equity. 2 Story's Equity Jurisprudence (13th ed.), p. 699; *Blake* v. *Blake*, 64 Me., 177, 182; 30 Corpus Juris, p. 951.

And surely they have been, and are, regarded as separate persons in divorce proceedings. Otherwise one spouse could not maintain a libel for divorce against the other.

And not only are they considered separate persons in divorce cases, but they have been regarded as distinct persons in proceedings brought for the annulment of divorces which had been obtained by fraud.

In *Holmes* v. *Holmes*, supra, a wife brought a petition in the Supreme Judicial Court in our County of York, for an annulment of a decree of divorce which her husband had by fraud procured against her at some previous term of that court. The husband had remarried. The defendant contended that a new trial could not be granted under the statute after one of the parties had contracted a new marriage, and that, therefore, the petition for annulment should be denied. But that contention was overruled by the court and the decree of divorce was annulled.

Peters, J., said:

"But this position cannot be sustained. A new trial is not asked for. If this motion prevails, none can be had. It cuts deeper than that. It seeks to nullify a previous proceeding. . . . It is not a motion to review or reverse, but to vacate a judgment, on account of a fraud practiced upon the court, injurious to a party who has not been heard."

It is also stated in the opinion that:

". . . if a decree fraudulently obtained cannot be vacated, then the court can be used by a reckless man as an instrumentality to deprive an innocent wife of a support from her husband, of the right to dower in his estate, of the possession of her children, besides stamping her name, it may be, with an unmerited disgrace. Such a retribution should not fall upon her at least."

And the same rule has been successfully invoked by a husband seeking annulment of a decree of divorce obtained by his wife by fraud. *Lord* v. *Lord*, 66 Me., 265.

Although the petitioner in the last named case prayed for a review, yet the court said:

"He evidently does not use the word review in the technical sense of a new trial under the statutes pertaining to a review, but in the sense of a re-hearing or re-examination, as incidental to his motion to set the decree wholly aside as having been obtained by fraud. The kind of review asked for is, that the proceedings be annulled."

In the case of *Hills* v. *Hills*, 76 Me., 486, Peters, C. J., in referring to *Holmes* v. *Holmes*, supra, and *Lord* v. *Lord*, supra, said:

> These "were cases in which the court recognized the existence of a right, not to grant a new trial, but to wholly annul a decree for a fraud practiced upon the court in obtaining a jurisdiction for divorce."

The same explanatory quotation is found in *Simpson* v. *Simpson*, 119 Me., 14, 109 A., 254.

And in *Leathers* v. *Stewart*, 108 Me., 96, 79 A., 16, Savage, J., said:

> "The apparent jurisdiction thus induced by fraud is colorable only.
>
> "And no doubt exists that in such cases the court may, and in proper cases should, vacate the decree of divorce on the petition of the defrauded spouse. . . And this may be done though the libellant has contracted a new marriage since the first one was dissolved."

It is apparent from the Maine cases last quoted that the right to petition a court in this state for the annulment of a divorce obtained by fraud was not based on statutory provisions allowing a new trial in divorce cases in certain circumstances; but on the inherent, natural right of an aggrieved spouse to apply directly to the court in which the fraud had been perpetrated by the other spouse, for such annulment. Neither party lacks capacity to maintain such a proceeding against the other, even although the result thereof leaves them still occupying the position of husband and wife, respectively.

When, however, such fraudulent divorce has not been obtained in the state where both parties reside, but in another state where neither lives, the aggrieved spouse cannot file her petition in a court in the state of their domicile for an annulment of such divorce. That form of remedy must be sought in the court in the sister state in which the divorce was granted. But an aggrieved spouse is not compelled to seek the courts of another state for the protection of her marriage status. The court of the state of domicile of the parties is not only able to do that, but has the exclusive right to do it.

Since, then, an aggrieved spouse cannot obtain relief by petition to a court in the state where the parties reside, when a divorce has been obtained in a distant state by fraud, and in evasion of the laws of the domicile of the parties, the only possible remedy in the state where the parties live, in the absence of statute, is an appeal to a court of equity.

And in *Henry* v. *Henry*, supra, a bill was maintained in the chancery court for the primary purpose of obtaining a decree that a divorce which had been granted in another state by fraud, was without force or effect in New Jersey.

And that is the only way that the aggrieved spouse can directly attack, in this state, a divorce granted in another state, and obtain a decision as to whether or not it is to be treated as void and of no effect in this state under the provision of R. S., Chap. 73, Sec. 12.

To deny a wife a judicial ruling on the question whether or not the facts presented in a given case show that a divorce had been granted in another state under such circumstances as rendered it void and of no effect in this state, would be to deny to her the full benefit of that statute, leaving her status to be decided piecemeal, from time to time, as the question should be incidentally presented.

No divorce has yet been granted this defendant in the Florida case, but the spouse who would be defrauded if a divorce should be obtained there is not bound to stand idly by until the defendant actually obtains such a divorce, based on his fraud, but may at once seek relief in a court of equity in this state to restrain him from further prosecuting his case there, since both parties are under the jurisdiction of this court.

Before the enactment of the Married Woman's Acts, a court of equity was able to protect and preserve the rights of a married woman to her separate property, when, because of common-law disability arising from the marriage status, she had no remedy at law. See Story's Equity Jurisprudence, p. 698 *et seq.*; Pomeroy's Equity Jurisprudence, secs. 52 and 1098; and 19 Am. Jur., p. 147, sec. 155.

And now a court of equity, with full equity jurisdiction, and special jurisdiction over fraud, is not so impotent and powerless as to be unable to grant relief to a wife against her husband in the circumstances of this case.

In the second *Kempson* case, the court said·

"The spouse who is domiciled in the state, and who fears irremediable mischief to the marriage relation, is as much entitled to judicial protection as the owner of ordinary property situate within the state."

And in *Gross* v. *Gross*, supra, it was said:

"Since . . . this court may protect the matrimonial res by entertaining a bill to annul such decree if it is obtained, it certainly possesses the power to enjoin the defendant from securing such decree, although no other relief may be asked or granted."

This exception of the defendant must also be overruled.

But a wife is not entitled, as a matter of right, to an injunction against her husband who is domiciled in the same state with her, to restrain him from further prosecuting against her in a state where neither of them dwells, a divorce proceeding based on his false allegation that he resides there.

Each case must be decided upon its own facts, and it is discretionary with the sitting Justice whether an injunction shall be granted or not. *Johnson* v. *Johnson*, supra. See 14 Ruling Case Law, p. 414; also 32 Corpus Juris, p. 116.

And in the absence of an abuse of judicial discretion, the decision of the sitting Justice on that question is not exceptionable.

It does not appear in the final decree before us whether the injunction was granted as a matter of right or of discretion. It is not necessary that it should appear. It is sufficient if the decree can be sustained on any legal ground, and it is not reversible unless plainly wrong, or based on error of law. *Rioux* v. *Portland Water District*, 132 Me., 307, 170 A., 63.

And since it does not appear here that there has been any abuse of discretion in this case, and the final decree not appearing plainly wrong, or based on error of law, the defendant's exceptions cannot be sustained.

*Exceptions overruled.*
*Appeal dismissed.*
*Decree below affirmed.*