Phineas SPRAGUE et al.

v.

Charles F. WASHBURN.

Supreme Judicial Court of Maine.

Argued May 13, 1982.

Decided July 8, 1982.

John V. Romei (orally), Brown, Tibbetts, Churchill & Romei, Machias, for Phineas Sprague.

Alan D. Graves (orally), Machias, for Mildred Geel.

Charles F. Washburn (orally), pro se.

Michael R. Leonard, Machias, for third party defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ.

McKUSICK, Chief Justice.

Defendant Charles F. Washburn appeals from the Superior Court's denial of his latest motions to dissolve the attachments on trustee process[1] in two civil actions pending against him in Washington County. Before the Law Court the dispositive question is whether the Superior Court justice who denied Washburn's motions could appropriately apply the principle of "law of the case" in the circumstances presented. Finding that he could, we affirm.

1. Defendant denominated each of his motions "Motions to Discharge John J. Whynott as Trustee of Defendant." By whatever name, the motions were the functional equivalent of motions to dissolve ex parte trustee process under M.R.Civ.P. 4B(i), from which they draw their procedural justification.

### The Facts

On March 3, 1981, Washburn, previously a practicing lawyer of Eastport,[2] was arrested on a criminal complaint. At the same time, the arresting officer, Lt. John J. Whynott of the Maine State Police, seized treasurer's and traveler's checks issued by Merrill Trust Company payable to Washburn in an aggregate amount of $19,500. On ex parte orders of approval, trustee process summonses were served upon Lt. Whynott in two separate civil suits brought against him by former clients, Phineas Sprague and Mildred Geel, asserting conversion and fraud. Plaintiff Sprague attached by trustee process on March 5, 1981, and plaintiff Geel, on March 10, 1981.[3] On March 11, 1981, Lt. Whynott filed trustee disclosures in both cases, stating in each that the checks "were seized by the alleged Trustee pursuant to Criminal Investigation and to be used as evidence in Court."

On April 3, 1981, Washburn entered a plea of nolo contendere to the pending criminal charges and on April 29, 1981, was sentenced to the Maine State Prison. He immediately started service of his sentence and has continued in that status to the present.

Although originally represented by counsel in the Geel suit, Washburn discharged his attorney in June, 1981, and has since actively participated *pro se* in both civil actions, serving a third party complaint and a counterclaim, filing interrogatories and a variety of motions, and fully prosecuting the present consolidated appeal, including preparation of the appendix and briefs and arguing orally before the Law Court. In early August Washburn filed motions in both cases to discharge Lt. Whynott as trustee,[4] the motions stating as their sole ground the following:

---

2. Washburn was disbarred by order of a single justice of the Supreme Judicial Court entered on January 5, 1981.

3. With court approval again entered ex parte, plaintiff Geel caused a second trustee summons to be served upon Lt. Whynott in August, 1981.

---

Said property of defendant is *in custodia legis* and not subject to attachment or trustee process, and public officers are not to be adjudged trustees, according to law, and more particularly according to the provisions of 14 M.R.S.A. § 2602.

That part of 14 M.R.S.A. § 2602 relating to public officers reads in full as follows:

No person shall be adjudged trustee:

.     .     .     .     .

By reason of any money in his hands as a public officer for which he is accountable to the principal defendant; ....

14 M.R.S.A. § 2602(3) (1980). On August 28 the clerk of courts notified Washburn that all his pending motions were scheduled to be heard on September 8, 1981. In each case, the motions scheduled to be heard on September 8 included one, dated July 31, 1981, seeking an order finding Washburn indigent and directing that he be transported at public expense from said Maine State Prison to and from wherever the hearing on his other motions might be held.

On September 8, 1981, an acting Superior Court justice considered all of Washburn's pending motions. The other parties were present through counsel. Neither Washburn nor anyone else had made any arrangements for him to be present; and Washburn had not requested a continuance and had not submitted any written argument of law except as stated in his motions to discharge the trustee. At the direction of the justice, a docket entry in the Geel case was made as follows:

9/8/81 Defendant's Motion to Discharge Trustees heard. Plaintiff appeared by Attorney [name omitted]. Defendant Washburn failed to appear pro se in Court or by attorney. Hearing held. Motion DENIED.

---

4. Except for the addition of the reference to 14 M.R.S.A. § 2602, the August motions were repetitive of motions filed in late July. Washburn's covering letters filing the substitute motions in early August stated that the statutory reference "has been added to conform more closely with the requirements of Rule 7, Maine Rules of Civil Procedure."

The docket entry in the Sprague case was in substance the same.[5]

■ Though promptly notified of the September 8th rulings of the Superior Court, Washburn took no appeal therefrom; but rather, by covering letter dated October 10, 1981, he filed the renewed motions to discharge the trustee that give rise to the present consolidated appeals. His new motions, quoting 14 M.R.S.A. § 2602(3), were based on exactly the same single ground stated in his motions that the Superior Court justice denied on September 8. Another justice of the Superior Court heard Washburn's new motions on November 9, 1981; this time, Washburn was present, having made prior arrangements with the justice for the issuance of a writ of habeas corpus for that purpose; and Washburn and counsel for plaintiffs argued orally the merits of the motions and the question whether the motions should be denied on the ground that the law of the case had been fixed by the September 8th ruling of the first justice. Having taken the questions under advisement, the second justice on December 2, 1981, denied both motions to discharge Lt. Whynott as trustee, without elaboration of his reasons. Washburn took timely appeals from the December 2nd denial of his motions.[6] The Law Court ordered the two appeals consolidated.

### The Law of the Case

■ The Superior Court justice who denied Washburn's last set of motions to discharge the trustee gave no reasons for his decision. Therefore, his action must be affirmed on appeal if it is supportable either on the merits, involving a question whether he correctly interpreted 14 M.R.S.A. § 2602(3), or on the principle of law of the case, involving a question whether he abused his discretion in considering himself bound by the first justice's ruling. *See Lipman Bros. v. Hartford Accident & Indemnity Co.,* 149 Me. 199, 217, 100 A.2d 246, 256 (1953); *Usen v. Usen,* 136 Me. 480, 508, 13 A.2d 738, 752 (1940); *cf. Morton v. Greater Portland Transit District,* Me., 440 A.2d 8, 10 (1982) (in absence of request for conclusions of law, ambiguous decree of Workers' Compensation Commission will be construed as legally correct). Under the circumstances with which he was presented, the second justice was in our view justified in treating the September 8th ruling as the law of the case. Accordingly, we do not decide whether section 2602(3) has any application to the present fact pattern.[7]

■ The Superior Court justice at the hearing on November 9 was confronted

---

5. In both cases the justice also considered and denied Washburn's motions dated July 31 for leave to proceed *in forma pauperis.*

6. The Superior Court's denial of appellant's motions to discharge the trustee was an interlocutory order. However, it relates to an attachment and therefore comes within a well established "collateral order" exception to the rule that only final judgments are appealable. *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.2 (Supp.1981). Orders dissolving or denying attachment and trustee process are appealable. *See Plumbago Mining Corp. v. Sweatt,* Me., 444 A.2d 361 (1982); *Foisy v. Bishop,* Me., 232 A.2d 797 (1967). So are orders approving attachment. *See Northeast Investment Co. v. Leisure Living Communities, Inc.,* Me., 351 A.2d 845 (1976).

  Appellees note that there is no case passing on the appealability of an order sustaining a trustee process previously authorized. However, the owner's interest in the alienability of his property, which was the basis of the decision in *Northeast Investment Co., supra,* is impaired exactly as much by such an order as by

an order approving attachment or trustee process initially. Where, as here, the attachment was granted ex parte, a motion to dissolve the attachment provides the attachee defendant the only opportunity for a hearing in the Superior Court. *See* M.R.Civ.P. 4A(g), 4B(i). In the case of trustee process such as that ordered here, where the property is being held by a third party, the owner suffers the additional burden of being denied use of the property for the duration of the attachment. *Cf. Connors v. International Harvester Co.,* Me., 437 A.2d 880 (1981) (preliminary injunction restraining plaintiff from further use of a vehicle purchased from defendant held to be appealable because similar in impact to an attachment).

7. We express no opinion, for example, whether the traveler's and treasurer's checks payable to Washburn are "money" in the hands of Lt. Whynott or would be, without further action, "money" when and if turned over to plaintiffs for satisfaction of any judgments they might in the future obtain.

with the fact that another justice sitting in the same court had two months earlier denied the very same motions after hearing.[8] Such is the classic occasion for application of "the wise policy that a judge should not in the same case overrule or reconsider the decision of another judge of coordinate jurisdiction." *Blance v. Alley*, Me., 404 A.2d 587, 589 (1979). *See also Warren v. Waterville Urban Renewal Authority*, Me., 259 A.2d 364, 367 (1969). That policy, which is commonly identified as the principle of the "law of the case," discourages judgeshopping, promotes orderly conduct of litigation, and serves the interest of finality and intra-court comity. *See Grant v. City of Saco*, Me., 436 A.2d 403, 405 (1981). The law of the case, however, is not a question of the jurisdiction or the power of a judge to reconsider the prior decision of a colleague. Rather, as a matter of practical judicial policy, a litigant may not, except for the most compelling reasons, reopen a question of law that another judge has already clearly decided in the same action. *See id.* If the second judge does in fact reconsider and modify a prior ruling of a colleague, the law of the case doctrine does not require the Law Court to reverse a correct decision by the second judge simply because it is contrary to the prior ruling. *See id.* at 405–06. That, however, is not the situation with which we are here presented. Here, the second Superior Court justice, we must assume, considered himself bound by the law of the case established by the first justice's ruling of September 8. The sole question on appeal is whether in the circumstances the moving party's absence from the September 8th hearing should deprive the resulting ruling of its normal law-of-the-case consequences.

The circumstances of the September 8th hearing were unusual in that the absent moving party was known by the judge and by counsel for the other parties to be serving time at the Maine State Prison. The Maine Constitution (art. I, § 20) guarantees every person the right to represent himself in court, and we will always be alert to prevent other civil litigants from taking advantage of the incarceration of their *pro se* adversaries. However, appellant Washburn does not show that anything of that sort occurred here. First, the September 8th hearing involved the single question, already well focused by Washburn's motions, whether 14 M.R.S.A. § 2602(3) barred plaintiffs from charging Lt. Whynott as trustee. As is revealed by the transcript of the November 9th hearing, at which Washburn *was* present, he even then did not offer any citation of authority and did not make any legal argument that was not evident from his original motions. Furthermore, Washburn makes no showing that his failure to participate in the September 8th hearing, either in person or by filing a supporting memorandum, resulted otherwise than from his own fault. Although disbarred, he was legally trained and through several years of practice had become familiar with the Washington County operations of the Superior Court. Throughout the pertinent period he was in frequent correspondence about these suits with the clerk of courts. He acknowledges that his July 31st motion for leave to proceed *in forma pauperis* was his only attempt to get himself transported to the hearing, and that he knew that that motion was itself not to be heard until September 8. He does not show or even suggest that he tried to telephone or write to make arrangements to be present. Nor did he ask to submit his motion on written memoranda, in lieu of a hearing in person, as the justice could have permitted under M.R.Civ.P. 78. Nor did he ask for a continuance. Finally, Washburn

---

**8.** A trial court should not purport to act on the merits of a motion unless it has in fact considered the merits, albeit without the moving party present at the scheduled hearing. When the moving party fails to appear, the court should either (a) act on the merits of the motion after hearing those present, (b) dismiss the motion for failure to prosecute, or (c) continue the hearing and suggest that sanctions against the moving party will be considered at the subsequent hearing. The language used on September 8, 1981, by the trial judge indicates that he took the first course, and nothing before the second judge on November 9 or before us now even suggests the contrary.

took no action whatever to seek relief from the September 8th order by asking the justice who entered it to reconsider or by taking an appeal to this court. The second justice was well justified in denying Washburn's motion on the authority of the September 8th order.

The entry must be:

Appeals denied.

Denial of motions to discharge John J. Whynott as trustee affirmed.

GODFREY, ROBERTS and VIOLETTE, JJ., concurring.

NICHOLS, Justice, concurring.

I can concur in the judgment entered this day but only upon a different analysis. 14 M.R.S.A. § 2602(3) applies solely where a trustee holds money for which he is accountable to a defendant. Such was not the fact here where the disclosure of the public officer holding the several checks reflects that he was holding them for the State to use as evidence against Washburn. His disclosure went unrebutted.

I cannot agree with the majority, however, that the doctrine of the law of the case may be invoked in this case to reach that result.

That doctrine is an articulation of the wise policy that a judge should not in the same case overrule or reconsider the decision of another judge of coordinate jurisdiction. *Blance v. Alley*, Me., 404 A.2d 587, 589 (1979).

That doctrine should be applied only when the question of law presented in the second instance is the same one which clearly was determined in the first instance. *See id.*; 1B Moore's Federal Practice ¶ 0.404[1] at 404 (1982). It is unclear from the record before us whether the Superior Court's earlier ruling on September 8, 1981, denying Washburn's motion to discharge the Trustee was an interpretation of 14 M.R.S.A. § 2602(3) or was in the nature of a judgment by default after Washburn failed to appear.

A judgment by default, it is true, operates as an adjudication on the merits. Field, McKusick and Wroth, *Maine Civil Practice* § 55.6 (1970). Such a judgment, however, does not disclose what issues were examined by the judge beyond the fact of default.

In such an ambivalent state of the record before him the justice who presided in Superior Court two months later could not conclude that the merits of the case had been examined and determined by his colleague who presided in September. He could, nevertheless, have ruled that the statute cited above was not applicable to the facts of the case before him and grounded his decision on that conclusion.

As salutary as the doctrine of the law of the case may be, it should not be overextended.[1]

This case goes too far.

---

1. *See* Annot. 20 A.L.R.Fed. 13 (1974); Lummus, *"The Law of the Case" in Massachusetts*, 9 Boston U.L.Rev. 225 (1929).