Louis FOISY

v.

Wesley BISHOP and Lorenzo O. Roy.

Supreme Judicial Court of Maine.

Sept. 6, 1967.

Orville T. Ranger, Brunswick, for appellant.

Gerald M. Amero, Portland, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

WEBBER, Justice.

■ This is an appeal from an interlocutory ruling vacating an attachment. There has been no hearing on the merits. The appeal is not prematurely taken. An order vacating an attachment falls within an exception to the "final judgment" rule and is immediately appealable since "great and irreparable loss" may otherwise result. See M.R.C.P., Rule 73; Field and McKusick, Comment Sec. 73.2; Swift & Co. Packers v. Compania Colombiana Del Caribe, (1950) 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206.

The complaint in the first instance alleged common ownership of real estate by plaintiff and defendants, the erection of a garage and outbuilding by the parties on the land held in common, and facts underlying the alleged need for partition. It further alleged that defendant Bishop "willfully and knowingly destroyed the garage and outbuilding in violation of Title 14, Sec. 7552 M.R.S.A." In addition to other demands not pertinent to this discussion, the complaint sought partition and equitable distribution of proceeds, and damages in the sum of $1600 against defendant Bishop presumably for the alleged destruction of commonly held property. Plaintiff next moved to amend his complaint in effect substituting for the words "in violation of Title 14 Sec. 7552, M.R.S.A." the words "in violation of Title 14, Section 7505, and in violation of Title 17, Section 2491 M.R.S.A." He also sought to increase the sum of damages demanded from defendant Bishop from $1600 to $2400. The defendants consented to the amendment but then moved to "dismiss the action brought by Plaintiff under Title 14, Sec. 7505 and under Title 17, Sec. 2491 of the Maine Revised Statutes because the Complaint fails to state a claim under either of those statutes against defendant Wesley Bishop upon which relief can be granted." Defendants further moved that pursuant to such dismissal, the court should order discharge of the attachment which plaintiff had initially made of defendant Bishop's property. The court then allowed plaintiff's amendment, dismissed "that portion of Paragraph 4 (as amended) relating to Title 14, Section 7505," but declined to dismiss that portion relating to a claimed violation of Title 17, Section 2491, permitting plaintiff to further amend by substituting "wantonly" for "knowingly" in his allegation charging destruction of property. On the theory that 14 M.R.S.A. Sec. 4603 dissolved the attachment, the complaint having been amended by consent of the parties "so as to embrace a larger demand than it originally did," the court ordered the attachment discharged. The plaintiff seasonably filed an amendment to paragraph 4 by which he charged that "Defendant Wesley Bishop willfully and wantonly or maliciously destroyed, injured, or defaced the garage and outbuilding in violation of Title 14, Sec. 7505, and in violation of Title 17, Sec. 2491 M.R.S.A." Thus matters stood when this appeal was taken.

We conclude that the attachment was prematurely discharged. 14 M.R.S.A. Sec. 4602 provides in pertinent part: "An attachment of real * * * property is dissolved * * * by an amendment of the complaint, by consent of parties, so as to embrace a larger demand than it originally did, *and judgment for the plaintiff thereon, unless the record shows that no claims were allowed the plaintiff not originally stated in the complaint.*" (Emphasis ours.)

■ It is obvious that the statutory references in the complaint and amendments were primarily designed to secure for the plaintiff multiple punitive damages. Recovery under 14 M.R.S.A. Sec. 7552, would have carried double damages, while under 14 M.R.S.A. Sec. 7505 or 17 M.R.S.A. Sec. 2491, if applicable, plaintiff might be awarded treble damages. Ordinarily the discharge of an attachment must await judgment at which time it can be ascertained with certainty whether or not plaintiff has been allowed claims "not originally stated in the complaint." In so say-

ing we do not question the power and the duty of the presiding justice to discharge attachments which have become meaningless and burdensome because there is *no* theory upon which plaintiff can secure a money judgment which requires the continued security afforded by the attachment. That, however, is not the situation here.

■ We are in accord with the ruling of the justice below that 14 M.R.S.A. Sec. 7505 relates to land and not to buildings and structures or other improvements erected thereon. The statute provides:

"If any joint tenant or tenant in common of undivided lands cuts down, destroys or carries away trees, timber, wood or underwood, standing or lying on such lands, or digs up or carries away ore, stone or other valuable thing found thereon, or commits strip or waste, without first giving 30 days' notice in writing under his hand to all other persons or to their agents or attorneys, and to mortgagors and mortgagees if any there are interested therein, *of his intention to enter upon and improve the land;* * * *; or if he does any such acts pending a process for partition of the premises, he shall forfeit 3 times the amount of damages. Any one or more of the cotenants, without naming the others, may sue for and recover their proportion of such damages." (Emphasis ours.)

This statute is of ancient origin and may be found, unchanged in substance, in Stat. 1821, Ch. 35, Sec. 2. It has been invoked many times but only with respect to the cutting of timber and the removal of stone—never in a case involving the destruction of buildings or structures. Hubbard v. Hubbard, (1839) 15 Me. 198; Moody v. Moody, (1839) 15 Me. 205; Maxwell v. Maxwell, (1850) 31 Me. 184; Dwinell v. Larrabee, (1853) 38 Me. 464; Mills v. Richardson, (1857) 44 Me. 79; Richardson v. Richardson, (1875) 64 Me. 62 (invasion of stone quarry) and Hall v. Hall, (1914) 112 Me. 234, 91 A. 949. In Richardson the court held that the statute must be narrowly construed because it is in derogation of common law and highly penal in its nature. It is perhaps in part because of this necessity for closely limited construction and in part because the statute is basically a notice statute giving protection to the cotenant who gives proper notice before removing timber, ore and the like from the land, that it has never been considered in over 140 years as applicable to the destruction of buildings and structures. The best evidence of this is found in a parallel line of cases affording a different remedy to cover the latter situation. As early as 1839 the Maine court dealt with the destruction of a sawmill by one tenant in common. Treating the mill as realty, the court said the cotenant might bring trespass quare clausum for the destruction of the building held in common. Maddox v. Goddard, (1839) 15 Me. 218. Recognizing that one cotenant could not ordinarily have trespass against another at common law, the court in Symonds v. Harris, (1862) 51 Me. 14, 19 recognized an exception and said: "It is also contended that, if the parties are tenants in common, this action cannot be maintained, because the defendants' possession, in such case, must be deemed to be the possession of all the co-tenants, and in subordination to their title. Such, undoubtedly, is the general rule of law. *But, to this general rule, there are exceptions, as where one tenant in common destroys the common property,* or so conducts with reference to it as to effect a practical destruction of the interest of his co-tenants therein." (Emphasis ours.) The same rule was applied in Davis v. Poland, (1906) 102 Me. 192, 66 A. 380, 10 L.R.A.,N.S., 212.

We deem it significant that not once in the "destruction" cases involving buildings and fixtures did the court intimate or suggest that the plaintiff might have recourse to the statutory remedy. No more did the court in the cases brought under the statute involving timber and stone make reference to the common law remedy as a possi-

ble alternative. The same situation has existed in Massachusetts where a statute very similar to our 14 M.R.S.A. Sec. 7505 has been in effect since earliest times. In but one reported case has there been even the slightest intimation of possible overlap as between remedies. In Byam v. Bickford, (1885) 140 Mass. 31, 2 N.E. 687, the plaintiffs erected a building on property owned in common over the objection of defendant. Plaintiffs sought treble damages under the notice statute. The court held the removal of the building by the defendant was justified to prevent ouster since a structure wrongfully placed on the land by part of the tenants tends to exclude the others \from their full possession. The court did not discuss the applicability of the notice statute to cases involving the destruction by one tenant in common of buildings or structures erected by all the tenants and there is no suggestion that the issue was raised or considered. Massachusetts recognizes that the notice statute must be strictly and narrowly construed. Jenkins v. Wood, (1888) 145 Mass. 494, 14 N.E. 512.

■ 17 M.R.S.A. Sec. 2491 is a part of the law relating to "malicious mischief" and has no application to the facts of this case. It provides a remedy against strangers to the title but in the light of the included phrase "without consent of the owner" is not to be invoked by one common owner against another.

■ We conclude, therefore, that the factual occurrence upon which this claim for relief is grounded may upon adequate proof entitle the plaintiff to a recovery of single damages under the common law doctrine of Davis v. Poland, supra. It will not warrant recovery of multiple damages under 14 M.R.S.A. Sec. 7505 or 17 M.R.S.A. Sec. 2491. The plaintiff, however, having alleged as a basic factual occurrence the wilful destruction of commonly owned buildings is not out of court merely because thus far he has mistaken his theory of recovery or measure of damages.

His complaint remains amendable. As is stated in the reporter's notes in Field and McKusick, Page 192, (with respect to Rule 15), "The words 'cause of action' are avoided in these rules, but the concept of 'claim for relief' is broad enough to include the mass of operative facts upon which the plaintiff's grievance is based. *The theory of recovery is not a part of the claim for relief and a shift of theory is permissible.*" (Emphasis ours.) As already noted, we are not here dealing with a situation in which there is *no* theory under which plaintiff could have a recovery on the facts stated. He is accordingly entitled to the continued security afforded by his attachment until judgment is rendered either for plaintiff or defendants. 14 M.R.S.A. Sec. 4602.

The entry will be

Appeal sustained. Case remanded to the Superior Court for further proceedings not inconsistent with this opinion.