## CASCO BANK & TRUST COMPANY

v.

### John R. EMERY and Portsmouth Savings Bank, Trustee

and

### Indian Head National Bank, Third Party Claimant.

Supreme Judicial Court of Maine.

Argued June 4, 1980.

Decided July 3, 1980.

---

Thompson, Willard & McNaboe by Leonard W. Langer, Portland, for plaintiff.

McEachern & Thornhill by Gregory Robbins, orally, Dan W. Thornhill, Kittery, for Indian Head National Bank.

Sanderson & Dudley by Thomas M. Dudley, Jr., Portsmouth, N. H., for Portsmouth Savings Bank.

Before McKUSICK, C. J., WERNICK, GLASSMAN, and ROBERTS, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

On its merits, this appeal seeks to resolve a controversy over two conflicting attachments on trustee process made against any "goods, effects, or credits" of principal defendant Emery in the hands of Portsmouth Savings Bank. In this action brought against Emery in the Maine District Court (Kittery), plaintiff Casco Bank & Trust Company caused trustee process to be served on Portsmouth Savings Bank on December 15, 1977. At the subsequent hearing to determine the amount, if any, for which Portsmouth Savings Bank should be charged as trustee, Indian Head National Bank as a third party claimant appeared and asserted that its trustee process served in a New Hampshire action on Portsmouth Savings Bank on December 9, 1977, was effective in reaching anything owed at any pertinent time by the trustee to Emery and left nothing unencumbered to be attached by Casco Bank's trustee process of December 15. The Maine District Court rejected Indian Head Bank's contention and entered a "judgment" holding Portsmouth Savings Bank chargeable on trustee process in Casco Bank's suit against Emery in the amount of $8,700.[1]

■ Without waiting for any other action whatever in the District Court—principal defendant Emery has never answered, nor has his default been entered—Indian Head Bank appealed to the Superior Court, which reversed the District Court ruling.[2] Casco Bank then appealed to this court. Since the District Court order holding the trustee chargeable was not a final judgment and also did not fall within the "collateral order" exception to the final judgment rule, the case was not ripe for appeal to the Superior Court. That court should have refused to entertain Indian Head Bank's appeal, and we likewise must dismiss the subsequent appeal to the Law Court. We remand the case to the Superior Court with directions to dismiss Indian Head Bank's appeal as premature.

■ Our cases have recognized a broad category of exceptions to the final judgment rule allowing appeals from collateral orders, interlocutory in nature, "in which the peculiar character of the question involved hardly admits of postponement [of appellate review], if any benefit is to be derived from it by the aggrieved party." *Northeast Investment Co. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845, 848 (1976); *Munsey v. Groves*, 151 Me. 200, 117 A.2d 64 (1955). *See Cohen v. Beneficial*

---

1. In December, 1977, both Casco Bank and Indian Head Bank had claims for debts allegedly owed them by defendant Emery. On the prior September 26th, Portsmouth Savings Bank had completed foreclosure of its first mortgage on real estate in Kittery owned in part by Emery. It thereafter contracted to sell the Kittery property at a price substantially in excess of the mortgage obligation; under 14 M.R.S.A. § 6204–A (1980) any surplus arising from the completed sale, less allowances retained by the mortgagee, must be rendered to "the mortgagor or his heirs, successors or assigns." Prior to the scheduled closing on December 15, 1977, both of the other banks learned of the impending sale of the foreclosed property by Portsmouth Savings Bank, and both attempted to attach on trustee process Emery's rights in and to the surplus expected to be generated by the sale. Indian Head Bank brought suit against Emery in a New Hampshire court, while Casco Bank proceeded in the Maine District Court in the case now before this court. Indian Head Bank purported to

attach the anticipated surplus funds prior to the closing by causing New Hampshire trustee process to be served on Portsmouth Savings Bank on December 9, 1977. Casco Bank, on the other hand, waited until December 15, 1977 —the date of the closing—and *immediately after the closing* caused Maine trustee process to be served on Portsmouth Savings Bank. On extensive findings of fact the District Court ruled that Indian Head Bank's service of trustee process was ineffective to attach the surplus fund prior to the time it came into the hands of the trustee.

2. The Superior Court's mandate, which ordered the case "remanded to the District Court for entry of judgment for third party Indian Head National Bank," was technically incorrect. In proceedings under the trustee process statute, 14 M.R.S.A. §§ 2601–3105 (1980), the trustee must either be held chargeable or else be discharged. *See id.* § 2631.

*Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Loyal Erectors, Inc. v. Hamilton & Son, Inc.*, Me., 312 A.2d 748, 751–52 (1973), we held that an order discharging the purported trustee is immediately appealable by the plaintiff "because 'great and irreparable loss' may otherwise result," quoting *Foisy v. Bishop*, Me., 232 A.2d 797, 798 (1967), *i.e.*, the property sought to be attached as security might not be available by the time the plaintiff could obtain review of the final judgment. *Cf. Foisy v. Bishop, supra* (order denying or vacating real estate attachment within "collateral order" exception). In *Northeast Investment, supra*, the court extended the "collateral order" exception by holding that an order *granting* a real estate attachment "is a decision of such significance" as to be immediately appealable by the defendant, the owner of the attached property, because "the attachment creates a lien on the property and effectively deprives the owner of his ability to convey clear title while the attachment remains outstanding." *Id.* at 851, 850. In dictum this court has recognized that the principle enunciated in *Northeast Investment* applies with equal force to an appeal *by the principal defendant* from an order allowing an attachment of his personal property on trustee process. *See Boyle v. Share*, Me., 377 A.2d 458, 461 & n. 4 (1977).

The situation created in the case at bar by the District Court "judgment" holding the Portsmouth Savings Bank chargeable as trustee—as to which decision only the third party claimant objects—is entirely different and does not justify a further extension of the "collateral order" exception. The court is not concerned here, as it was in *Northeast Investment*, with the right of the principal defendant to protect his property from the restraints of attachment; defendant Emery has not appeared either in the District Court or in the appeal proceedings to assert any interest in the surplus proceeds from the Portsmouth Savings Bank's sale of the foreclosed real estate. Rather, this in-

terlocutory appeal boils down to a dispute between Casco Bank and Indian Head Bank over the surplus fund which both have attempted to trustee. At most, the only conceivable harm to the third party claimant from postponing review until a final judgment is rendered in the principal action against Emery is that Indian Head Bank will have to wait to have the contested funds freed from Casco Bank's attachment.[3] The whole rationale for extending the "collateral order" exception to protect the principal defendant from having his property tied up to his detriment during the pendency of the principal action is absent from this battle fought exclusively between two of his creditors.

In the circumstances of this appeal, all of the reasons behind the final judgment rule come into play. We have no way of knowing that the principal debt has not been paid off, has not been discharged in bankruptcy, or otherwise is not due and owing to Casco Bank, which has never proved its claim. We have no way of knowing whether a default will be entered against defendant Emery and even if so whether plaintiff Casco Bank will be in a position to file the affidavits required by M.R.Civ.P. 55(b)(1), (4) as prerequisites to entry of judgment in its favor. In other words, for all we know this court may never be called upon to decide the interlocutory question now sought to be presented. *See Fidelity & Casualty Co. v. Bodwell Granite Co.*, 102 Me. 148, 66 A. 314 (1906); 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.1 (2d ed. 1970). Piecemeal appeals often turn out to be unnecessary appeals, and they always impose an additional burden upon the appellate courts. In the face of the Law Court's heavy caseload in the 1980s, the final judgment rule fashioned in the more leisurely appellate days of the turn of the century, *see id.*, becomes a matter of more than preferred court procedure. It becomes an imperative in the proper marshalling of hardpressed court resources.

---

**3.** Even that speculative harm is absent from this case in view of the fact that Portsmouth Savings Bank has already paid the funds to

Indian Head Bank under an indemnity agreement.

The entry will be:

Appeal dismissed.

Judgment of the Superior Court vacated.

Remanded to the Superior Court for entry of an order dismissing the appeal by Indian Head National Bank to the Superior Court and remanding to the District Court for further proceedings.

Costs on appeal shall be allowed to Casco Bank & Trust Company.

All concurring.