**STATE of Maine**

v.

**ST. REGIS PAPER COMPANY and Northeast Helicopter Services, Inc.**

Supreme Judicial Court of Maine.

Argued March 16, 1981.

Decided July 15, 1981.

William C. Nugent, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Daniel E. Boxer (orally), Ralph I. Lancaster, John W. Gulliver, Portland, for defendants.

Eaton, Peabody, Bradford & Veague, Daniel G. McKay (orally), Bangor, for Northeast Helicopter.

Before GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ., and DU-FRESNE, A.R.J.

CARTER, Justice.

The State appeals from two Superior Court Orders (consolidated by order of the Law Court) dismissing appeals from two District Court Orders which granted the defendants' Motions for Stays of Further Proceedings. The merits of the District Court's decision to order those stays are not before us. The only issue here presented is whether the State's appeals to the Superior Court were premature and therefore properly dismissed pursuant to the final judgment rule. *See Breau v. Breau*, Me., 418 A.2d 193, 195 (1980); *Casco Bank & Trust Co. v. Emery*, Me., 416 A.2d 261, 262–63 (1980).

In June 1979, the defendants, St. Regis Paper Company ("St. Regis") and Northeast Helicopter Services, Inc. ("Northeast"), conducted an aerial herbicide spraying operation in the Edmonds area. In September of the same year, ten private landowners filed a civil suit in the Superior Court (Washington County) seeking a recovery from St. Regis and Northeast of one hundred million dollars in actual and punitive damages claimed to have arisen from the spraying operation. That case, *Pottle v. St. Regis Paper Company and Northeast Helicopter Services, Inc.*, remains pending in the Superior Court.

In January of 1980, the State of Maine, acting by and through the Attorney General, commenced civil actions against St. Regis and Northeast in the District Court at Machias for violations of the pesticide laws

---

* Glassman, J., sat at oral argument and participated in the initial conference but died before the opinion was adopted.

in connection with the same spraying operation. In those proceedings, the State seeks civil penalties of $7,000 against St. Regis for violations of 22 M.R.S.A. §§ 1471–D(8), 1471–J and 7 M.R.S.A. §§ 606, 616, plus civil penalties of $2,500 against Northeast for violations of 7 M.R.S.A. §§ 606, 616.

In April of 1980, both defendants moved in the District Court to stay the District Court proceedings pending ultimate resolution of the *Pottle* suit in the Superior Court. The motions were supported by affidavits from each defendant's attorney stating that simultaneous defense of both suits would require extensive duplication of discovery and other pretrial effort. In May 1980, the District Court, reciting that good cause had been shown, ordered in each action "that all proceedings . . . be stayed pending final resolution" of the *Pottle* case.

The State appealed to the Superior Court pursuant to M.D.C.Civ.R. 73. The Superior Court justice granted the defendants' motions to dismiss the appeals stating:

> This case does not come within the exception to the final Judgment rule which allows appeals from collateral order [*sic*] interlocutory in nature. . . . This Court finds that no great or irreparable loss may result to the plaintiff if determination of the issues raised by the pleadings is postponed by Order to Stay.

The State appealed from these Orders to this Court. The parties agree that the Stay Orders entered in the District Court were Interlocutory Orders which are only appealable if within an exception to the Final Judgment Rule. We hold that the Stay Orders are within the exception to the Final Judgment Rule recognized in *Bar Harbor Banking and Trust Co. v. Alexander*, Me., 411 A.2d 74 (1980), which is based upon the "separation of powers" doctrine. We therefore vacate the judgments and remand to the Superior Court for further proceedings.

We have recently reaffirmed our long-standing rule that the Superior Court should not entertain an appeal from the District Court unless there is a final judgment. *See Breau v. Breau*, Me., 418 A.2d 193, 195 (1980); *Casco Bank & Trust Co. v.*

*Emery*, Me., 416 A.2d 261, 262–63 (1980). We have, however, recognized certain exceptions to the "final judgment" rule. *See generally*, 2 R. Field, V. McKusick, and L. Wroth, *Maine Civil Practice*, §§ 73.2–73.5 (2d ed. 1970). One exception, first articulated in *Bar Harbor Banking and Trust Company v. Alexander*, is based upon our recognition of the constraints placed upon judicial action in certain circumstances by the constitutional doctrine of "Separation of Powers". That doctrine is fundamental to the American concept of government. As the United States Supreme Court has said:

> The Constitution, in distributing the powers of government, creates three distinct and separate departments. . . . This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital, [citations omitted], namely, to preclude a commingling of those essentially different powers of government in the same hands.

*O'Donoghue v. United States*, 289 U.S. 516, 530, 53 S.Ct. 740, 743, 77 L.Ed. 1356, 1360 (1933). Separation of the powers of government among the legislative, executive, and judicial branches both prevents the concentration of excessive power in the hands of any single governmental entity and provides a framework of three distinct power centers, thus permitting the implementing of the "checks and balances" theory. For checks and balances to operate effectively in the scheme of state government, care must be taken to maintain the separation of powers and functions:

> It is very essential that the sharp separation of powers of government be carefully preserved by the courts to the end that one branch of government shall not be permitted to unconstitutionally encroach upon the functions properly belonging to another branch, for only in this manner can we preserve the system of checks and balances which is the genius of our government.

*Giss v. Jordan*, 82 Ariz. 152, 164, 309 P.2d 779, 787 (1957). It is likewise necessary that the lines of separation between the

power groupings authorized by the Constitution be defined and respected:

It is also essential to the successful working of this system that the persons intrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department *and no other.*

*Kilbourn v. Thompson*, 103 U.S. 168, 191, 26 L.Ed. 377, 387 (1880). (emphasis added).

By way of amplification of this concept, it is said:

The powers of these departments are not merely equal; *they are exclusive* in respect to the duties assigned to each, and they are absolutely independent of each other. The encroachment of one of these departments upon the other is watched with jealous care, and is generally promptly resisted, for the observance of this division is essential to the maintenance of a republican form of government.

*Langenberg v. Decker*, 131 Ind. 471, 478, 31 N.E. 190, 193 (1892) (emphasis added).

The Maine Constitution mandates "[i]n clear and unmistakable language" the separation and allocation of powers among the separate and independent branches of government. *Bar Harbor Banking and Trust Co. v. Alexander*, 411 A.2d at 76; *Board of Overseers of Bar v. Lee*, Me., 422 A.2d 998, 1002 (1980); *see Ex parte Davis*, 41 Me. 38, 53 (1856).

These political science concepts, embodied in the Constitutional mandate underlie the exception to the final judgment rule articulated in *Bar Harbor Banking*. There, a member of the Executive Branch, pursuing her legitimate governmental function of enforcing the laws, found her activities stayed by a temporary restraining order that enjoined her from holding a scheduled hearing to determine whether a bank had violated certain statutory regulations. Thus was created a conflict between the Executive Department's enforcement function and the Judicial Department's adjudicatory function: the judicial action would at least temporarily stop the Executive Branch from enforcing the laws. This raised the question of the legitimacy of the issuance of the temporary restraining order. The judicial action severely hampered the ability of the Executive Branch to carry out its enforcement function. Yet, because the judicial act creating the hinderance was not a "final judgment," it appeared that appellate review would be barred for the indefinite future.

The effect of that bar was to prevent an official of the Executive Branch from performing a statutorily mandated duty. Recognizing that an issue of such profound importance to the proper functioning of government should not be permitted to go unresolved, even temporarily, we found it to be improper to apply the final judgment rule so as to preclude prompt judicial resolution of destructive inter-branch clashes of authority. We said:

The constitutionally mandated separation of powers forbids precipitous injunctive interference with the legitimate, ongoing executive function. [citations omitted]. Moreover, judicial interference with apparently legitimate executive department activity not only disrupts the administrative process *but also encourages the circumvention of statutorily authorized investigation and enforcement mechanisms.* To avoid this result and to safeguard the separation of powers, we will review this temporary restraining order issued to restrain a state administrative agency from holding a hearing pursuant to a statute which on its face grants the agency authority to conduct such a hearing.

*Bar Harbor Banking*, 411 A.2d at 77 (emphasis added).

That exception applies here. The statutes which the defendant allegedly violated are intended to protect the public by regulating the labeling, distribution, storage, transportation, use, disposal, sale and application of chemical pesticides.[1] Violations of

---

1. 7 M.R.S.A. § 603 provides as follows:
   § 603. Declaration of Purpose

The purpose of this subchapter is to regulate in the public interest, the labeling, distri-

these laws are "civil violations," [2] and therefore enforceable by the Attorney General. 17–A M.R.S.A. § 4(3).[3] Judicial interference with the Attorney General's enforcement function here also encourages "the circumvention of statutorily authorized ... enforcement mechanisms." *Bar Harbor Banking*, 411 A.2d at 77.

If the State is denied the opportunity to appeal from the District Court's decision to stay these proceedings, then review of that decision, which limits the prosecutor's ability to enforce the Acts in question, may remain in abeyance until there is a final determination of the proceedings. That determination cannot take place, of course, as long as the District Court's stays remain in place. By the time the stays are lifted and proceedings recommence, the passage of time and change of circumstance may well have made it impossible for the prosecutor to achieve his enforcement goals and to adequately protect the public interest. Thus, if indeed the granting of the stays here in question amounts to "precipitous injunctive interference with the legitimate,

ongoing executive function" (a question not before us and on which we express no opinion), application of the final judgment rule to delay appeal may well frustrate the executive purpose, jeopardizing the public interest while leaving the executive without an effective remedy.

The goals of judicial economy and effective appellate review intended to be furthered by the final judgment rule are not so weighty as to justify undue delay in resolving this serious inter-branch dispute. No general harm will be done to those goals by permitting review of the District Court orders as an exception to the final judgment rule.[4] It was the need for prompt resolution of such interbranch confrontations that provided the basis for the "separation of powers exception" to the final judgment rule articulated in *Bar Harbor Banking and Trust Co. v. Alexander.* The stays here achieve precisely the same effect as the injunctive relief at issue in that case. As we there stated, "The constitutionally mandated separation of powers forbids precipi-

bution, storage, transportation, use and disposal of pesticides as hereinafter defined. The Legislature hereby finds that pesticides are valuable to our State's agricultural production and to the protection of man and the environment from insects, rodents, weeds and other forms of life which may be pests; but it is essential to the public health and welfare that they be regulated to prevent adverse effects on human life and the environment. New pesticides are continually being discovered or synthesized which are valuable to the control of pests and for use as defoliants, desiccants, plant regulators and related purposes. The dissemination of accurate scientific information as to the proper use of any pesticide is vital to the public health and welfare and the environment, both immediate and future. Therefore, it is deemed necessary to provide for regulation of such pesticides.
22 M.R.S.A. § 1471–A provides as follows:
§ 1471–A. Purpose and policy
For the purpose of assuring to the public the benefits to be derived from the safe, scientific and proper use of chemical pesticides while safeguarding the public health, safety and welfare, and for the further purpose of protecting natural resources of the State, it is declared to be the policy of the State of Maine to regulate the sale and application of chemical insecticides, fungicides, herbicides and other chemical pesticides.

**2.** 7 M.R.S.A. § 616 expressly states that any person violating any provision of 7 M.R.S.A. §§ 601–624 commits a civil violation.

22 M.R.S.A. § 1471–J provides that penalties for violating any provision of 22 M.R.S.A. §§ 1471–A–1471–N consist solely of fines. According to 17–A M.R.S.A. § 4–A(4):
If a criminal statute or criminal ordinance outside this code prohibits defined conduct but does not provide an imprisonment penalty, it is hereby declared to be a civil violation
. . . .

**3.** 17–A M.R.S.A. § 4(3) provides in part:
All civil violations are expressly declared not to be criminal offenses. They are enforceable by the Attorney General, his representative or any other appropriate public official in a civil action to recover what may be designated a fine, penalty or other sanction, or to secure the forfeiture that may be decreed by the statute.

**4.** Indeed, appellate review now will be more effective and meaningful than review in the distant future when the issue of whether the stays were properly granted may be, for purposes of this case, moot.

tous injunctive interference with the legitimate, ongoing executive function." *Id.* at 77. That principle applies here. The Superior Court should have reviewed the District Court decision to enter the stays under that exception to the final judgment rule.[5]

The entry is:

Judgments of the Superior Court vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

5. Again, we note that because the Superior Court did not reach the question of whether the District Court properly granted the stays, our judgment is not a ruling on that issue. We express no opinion as to the merits of that dispute.