STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-13-CV-18
UCN-CUM - 6/27/2013

THE BANK OF MAINE, f/k/a, SAVINGS )
BANK OF MAINE, )
)
)
Plaintiff, )
)
v. )
)
BOOTHBAY COUNTRY CLUB, LLC, et )
al., )
)
)
Defendants

**DECISION AND ORDER**
(Motion for Temporary Restraining Order)

This matter is before the Court on Defendant James Reeves' Motion for Temporary Restraining Order. Through his motion, Defendant Reeves asks the Court to enjoin Plaintiff The Bank of Maine (the Bank) from litigating or attempting to litigate a matter filed in the Superior Court in New Haven, Connecticut, which action is captioned *The Bank of Maine, f/k/a, Savings Bank of Maine v. James R. Reeves* (the Connecticut action).

## FACTUAL BACKGROUND

On October 30, 2008, the Club purchased certain property (real and personal) located in Boothbay and Boothbay Harbor (the Property). At the time, Defendant Reeves was an owner of the Club. To finance the purchase, the Club obtained a loan from the Bank in the amount of $2,890,000, and executed a promissory note in that amount in favor of the Bank. To secure the Club's obligations under the promissory note, the Club granted a mortgage on the Property. In addition, Defendant Reeves executed a commercial guaranty of the Club's financial obligations to the Bank.

The Club defaulted on its obligations, and on October 30, 2012, the Bank forwarded notices of default to the Defendants by certified mail. Neither the Club nor Defendant Reeves cured the default. As of January 28, 2013, the outstanding obligation to the Bank was $2,590,567.45.

Pursuant to 14 M.R.S. § 6203-A, the Bank initiated a power of sale foreclosure of the Property, and scheduled a public sale of the Property for January 28, 2013. The Bank served the Club and Defendant Reeves with notice of the sale. The Bank placed the highest bid at the sale, and obtained the Property for $1.5 million.

In this action, the Bank seeks to recover a judgment in the amount of the difference between the sale price and the balance of the Club's debt to the Bank. The Club and Defendant Reeves contend that the foreclosure sale is invalid because the Bank did not comply with the statutory requirements of the foreclosure process.

According to Defendant Reeves' motion, the Bank has asserted similar claims against Defendant Reeves in the Connecticut action. Defendant requests that the Court enjoin the Bank from pursuing the Connecticut action. In support of his motion, Defendant Reeves argues that injunctive relief is warranted because the simultaneous actions will increase his legal expense and raise the possibility of the inconsistent results.

## DISCUSSION

Defendant Reeves seeks a temporary restraining order under M.R. Civ. P. 65(a). Under Maine law,

> A party seeking injunctive relief by a temporary restraining order or a preliminary injunction has the burden of demonstrating to the court that four criteria are met. The moving party must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a

2

substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction. Failure to demonstrate that any one of these criteria are met requires that injunctive relief be denied. A temporary restraining order may be granted only if it 'clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant.' '[P]roof of irreparable injury is a prerequisite to the granting of injunctive relief.' 'Irreparable injury" is defined as "injury for which there is no adequate remedy at law.' (citations omitted).

Bangor Historic Track, Inc. v. Dep't of Agric., 2003 ME 140, 837 A.2d 129, 132-33.

In this case, however, before the Court assesses whether Defendant Reeves has demonstrated the criteria necessary for the issuance of a temporary restraining order, the Court must consider the specific nature of Defendant Reeves' request. Through his motion, Defendant Reeves requests that the Court enjoin the Bank from pursuing a cause of action in another state. In other words, Defendant Reeves is seeking an "antisuit injunction."

Generally, "[a]n anti-suit injunction is appropriate in four instances: 1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation." *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996). *See also* Kurtis J. Kemper, Annotation, *Propriety Under Circumstances of State Court Injunction Against Nonmatrimonial Action in Court of Sister State*, 20 A.L.R. 6th 211 (2006) ("A state court has discretion to grant an injunction restraining a party from commencing or prosecuting an action in a sister state's court. That discretion, however, is exercised sparingly and only under extraordinary circumstances."). The Maine Law Court has acknowledged that in other jurisdictions an antisuit injunction has been "applied to prevent an evasion of the law of domicile; to prevent great hardship and expenses in defending in the sister state; to prevent one citizen from obtaining an

3

inequitable advantage over another; and where the suit in the other state would work great wrong and injury to others." *Usen v. Usen*, 136 Me. 480, 13 A.2d 738, 744 (1940) (citations omitted).

Here, the Bank has commenced the Connecticut action primarily to seek a prejudgment attachment of assets that Defendant Reeves allegedly has in Connecticut. The Bank has expressly represented that after it obtains a ruling on its motion for attachment in the Connecticut action, the Bank intends to request a stay of further proceedings in the Connecticut action. Under these circumstances, this Court's jurisdiction is not jeopardized, Defendant's additional legal costs will be limited, the substantive issues would be resolved based on Maine law in the Maine action, and the Connecticut action was filed for legitimate purposes, and was not filed to harass Defendant Reeves. The Court, therefore, does not believe an "antisuit injunction" is warranted.[1]

## CONCLUSION

Based on the foregoing analysis, the Court denies Defendant Reeves' Motion for Temporary Restraining Order.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 6/27/13

_____
Justice, Maine Business & Consumer Court

---

[1] Because the Court has determined that Defendant Reeves is not entitled to an "antisuit injunction," the Court does not discuss in detail whether Defendant Reeves has demonstrated the four criteria necessary for the issuance of a temporary restraining order. However, based on the Court's review of the current record, the Court concludes that Defendant Reeves has not satisfied the criteria. At a minimum, Defendant Reeves has not demonstrated the requisite irreparable harm.

4

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-13-CV-18

JCN - CUM - 6/28/2013

)
THE BANK OF MAINE, f/k/a, SAVINGS )
BANK OF MAINE, )
)
)
Plaintiff, )
)
v. )
)
BOOTHBAY COUNTRY CLUB, LLC, et )
al., )
)
Defendants )

**DECISION AND ORDER**
(Motions to Dismiss)

In this matter, Counterclaim Defendant The Bank of Maine (the Bank) and Third-party

Defendants PGC1, LLC, PGC2, LLC, and Paul Coulombe have moved for dismissal of the

pending counterclaim and third-party complaint. Through their motions, the Bank and the Third-

party Defendants seek the dismissal, pursuant to M.R. Civ. P. 12(b)(6), of the claims asserted by

Defendants Boothbay Country Club, LLC, (the Club) and James Reeves (Defendant Reeves).[1]

## FACTUAL BACKGROUND

On October 30, 2008, the Club purchased certain property (real and personal) located in

Boothbay and Boothbay Harbor (the Property). At the time, Defendant Reeves was an owner of

the Club. To finance the purchase, the Club obtained a loan from the Bank in the amount of

$2,890,000, and executed a promissory note in that amount in favor of the Bank. To secure the

Club's obligations under the promissory note, the Club granted a mortgage on the Property. In

addition, Defendant Reeves executed a commercial guaranty of the Club's financial obligations

to the Bank.

---

[1] The Court will refer to the Club and Defendant Reeves collectively as "Defendants."

The Club defaulted on its obligations, and on October 30, 2012, the Bank forwarded notices of default to the Defendants by certified mail. Neither the Club nor Defendant Reeves cured the default. As of January 28, 2013, the outstanding obligation to the Bank was $2,590,567.45.

Pursuant to 14 M.R.S. § 6203-A, the Bank initiated a power of sale foreclosure of the Property, and scheduled a public sale of the Property for January 28, 2013. The Bank served the Club and Defendant Reeves with notice of the sale. The Bank placed the highest bid at the sale, and obtained the Property for $1.5 million.

In this action, the Bank seeks to recover a judgment in the amount of the difference between the sale price and the balance of the Club's debt to the Bank. The Club and Defendant Reeves contend that the foreclosure sale is invalid because the Bank did not comply with the statutory requirements of the foreclosure process.

Through their Counterclaim and Third-party Complaint, the Club and Reeves seek to set aside the foreclosure sale. In addition, the Club and Reeves seek monetary damages for the Bank's alleged breach of confidentiality under 9-B M.R.S. § 162, and for the Bank's alleged conspiracy with Third-party Defendants Paul Coulombe and PGC1 in violation of 10 M.R.S. § 1101 et seq. The Club and Reeves also seek damages from Third-party Defendants Coulombe and PGC2 for conversion, trespass, and tortious interference.

The Bank seeks dismissal of the Counts asserted against it in the Counterclaim. Third-party Defendants request dismissal of the Third-party Complaint.

## DISCUSSION

In their motions, the Bank and Third-party Defendants contend that the Club and Reeves have failed to assert an actionable cause of action. More specifically, they argue that the Club and Reeves have not alleged any facts to support their claims. Rather, according to the Bank and

2

Third-party Defendants, the Club and Reeves have simply asserted legal conclusions, which are insufficient.

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). When reviewing a motion to dismiss, this Court examines "the [pleading] in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal under M.R. Civ. P. 12(b)(6) will be granted only "when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.* (quotation marks omitted).

All of the claims, at least to some degree, are based on Defendants' contention of the Club and Reeves that the Bank did not conduct the foreclosure sale properly. In their motions to dismiss, therefore, the Bank and Third-party Defendants primarily focus on the allegation regarding the sale. In particular, the Bank and Third-party Defendants cite the failure of the Club and Reeves to allege that they suffered any actual harm as the result of the purported improper sale.

In Count 1 of the counterclaim and third-party complaint, the Club and Reeves, pursuant to Maine's Declaratory Judgments Act (14 M.R.S. § 5951, et seq.), request that the Court determine that the Bank did not complete the sale properly and, therefore, that the sale is void. 14 M.R.S. § 5954 (2012) provides in pertinent part, "[a]ny person .... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the .... statute .... and obtain a declaration of rights, status or other legal relations thereunder." Here, the Club and Reeves seek a declaration that the foreclosure sale is

3

void because the Bank did not conduct the foreclosure sale in accordance with 14 M.R.S. § 6203-A, et seq. The Club and Reeves, therefore, assert that their rights in the property have been affected by the power of sale statute,[2] and seek a declaration of their rights under that law (i.e., whether the statute's requirements were satisfied and, if not, the consequences of the noncompliance). The Club and Reeves thus have stated a claim for declaratory relief.

As mentioned above, the remaining counts of the counterclaim and third-party complaint are at least in part related to the validity of the sale. That is, through their declaratory judgment action and several other theories, the Club and Reeves allege that the Bank improperly conducted the sale of property in which the Club and Reeves had an interest, that as a result of the sale the Club and Reeves no longer have an interest in the property, and that the actions of the Bank and Third-party Defendants in the disposition of the property form the basis of additional claims (e.g., conversion). While the Court acknowledges that the Club and Reeves have not asserted all of their claims with great specificity, except as discussed below, the Court cannot conclude that "it appears beyond a doubt that [they are] entitled to no relief under any set of facts that he might prove in support of [their] claim." *Shaw v. S. Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996).[3]

The only remaining claims that warrant further comment are Count three of the Club's counterclaim and Count four of Defendant Reeves' counterclaim in which claims the Club and

---

[2] The Bank and Third-party Defendants argue that the Club and Reeves have not alleged actual harm that they suffered as the result of the sale. Given that their interest in the property was extinguished in the sale, their "rights [in the property] .... are [allegedly] affected by the [power of sale] statute ..." 14 M.R.S. § 5954 (2012).

[3] The Defendants also allege that the Bank and Third-party Defendants Paul Coulombe and PGC1, LLC, conspired to restrain trade in violation of Maine's antitrust statute (10 M.R.S. § 1101, et seq.). In support of their request for dismissal of the claim, the Bank and Third-party Defendants argue that the Club and Reeves have failed to allege sufficient facts to support the claim, and that the claim is illogical. The Club and Reeves assert that the same law firm represented the Bank and purchaser, and that there was an attempt to limit the potential bidders. The issue at this stage of the proceedings is whether the Club and Reeves have stated a claim, not whether they are likely to prevail (i.e., whether the claim is logical). Given that the Club and Reeves have alleged that the parties conspired to limit the number of people who bid on the property, they have stated a claim that the parties contracted or conspired to restrain trade.

4

Reeves allege the Bank's violation of 9-B M.R.S. § 162, which prohibits the Bank's dissemination of its customer's financial records. In these counts, Defendants seek the imposition of civil penalties pursuant to 9-B M.R.S. § 164, which provides that a financial institution that "intentionally or knowingly furnishes financial records in violation of this chapter commits a civil violation for which the superintendent may assess a civil penalty of not more than $5,000 per violation." 9-B M.R.S. § 164 (2012). The plain language of the statute provides that the superintendent [of financial institutions] is authorized to impose a civil penalty in the event an institution improperly disseminates financial records. The same statute does not confer upon the court jurisdiction to consider the imposition of civil penalties. In the Court's view, the civil penalty is available in an administrative enforcement action, and not in this proceeding.

## CONCLUSION

Based on the foregoing analysis,

1. The Court grants the Bank's Motion to Dismiss Count three of the Club's counterclaim.

2. The Court grants the Bank's Motion to Dismiss Count four of Defendant Reeves' counterclaim.

3. The Court otherwise denies the Bank's Motion to Dismiss.

4. The Court denies the Third-party Defendants' Motion to Dismiss.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 6/27/13

_____
Justice, Maine Business & Consumer Court

5

STATE OF MAINE                              BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                             LOCATION: Portland
                                            Docket No. BCD-13-CV-18
                                            JCN-CUM- 6/25/2013

                                    )
THE BANK OF MAINE, f/k/a, SAVINGS   )
BANK OF MAINE,                      )
                                    )
                Plaintiff,          )       **DECISION AND ORDER**
                                    )       (Motion for Attachment)
        v.                          )
                                    )
BOOTHBAY COUNTRY CLUB, LLC, et      )
al.,                                )
                                    )
                Defendants          )

This matter is before the Court on the Motion for Attachment and Attachment on Trustee

Process of Plaintiff The Bank of Maine (the Bank). In particular, the Bank seeks an attachment

in the amount of $1,090,567.45 on the property of Defendants Boothbay Country Club (the

Club) and James R. Reeves (Defendant Reeves).[1]

## FACTUAL BACKGROUND

On October 30, 2008, the Club purchased certain property (real and personal) located in

Boothbay and Boothbay Harbor (the Property). At the time, Defendant Reeves was an owner of

the Club. To finance the purchase, the Club obtained a loan from the Bank in the amount of

$2,890,000, and executed a promissory note in that amount in favor of the Bank. To secure the

Club's obligations under the promissory note, the Club granted a mortgage on the Property. In

addition, Defendant Reeves executed a commercial guaranty of the Club's financial obligations

to the Bank.

---

[1] The Court will refer to the Club and Defendant Reeves collectively as "Defendants."

The Club defaulted on its obligations, and on October 30, 2012, the Bank forwarded notices of default to the Defendants by certified mail. Neither the Club nor Defendant Reeves cured the default. As of January 28, 2013, the outstanding obligation to the Bank was $2,590,567.45.

Pursuant to 14 M.R.S. § 6203-A, the Bank initiated a power of sale foreclosure of the Property, and scheduled a public sale of the Property for January 28, 2013. The Bank served the Club and Defendant Reeves with notice of the sale. The Bank was the highest bidder at the sale, and obtained the Property for $1.5 million.

In this action, the Bank seeks to recover a judgment in the amount of the difference between the sale price and the balance of the Club's debt to the Bank. The Club and Defendant Reeves contend that the foreclosure sale is invalid because the Bank did not comply with the statutory requirements of the foreclosure process.

## DISCUSSION

Pursuant to M.R. Civ. P. 4A and 4B, the Court may approve an order of attachment or trustee process after notice to the defendant, a hearing, and

> upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c); *see* M.R. Civ. P. 4B(c) (containing nearly identical language regarding trustee process). The "more likely than not" standard is "greater than 50% chance of prevailing." *Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996) (quotation marks omitted). An attachment motion or motion for trustee process must be supported by affidavits setting "forth specific facts sufficient to warrant the required finding and shall be made upon the affiant's own knowledge, information or belief." M.R. Civ. P. 4A(c), (i); *see* M.R. Civ. P. 4B(c) (requiring a

2

motion for trustee process to be supported by affidavits meeting the requirements set forth in Rule 4A(i)). In determining whether to grant a motion to attach, the court "assesses the merits of the complaint and the weight and credibility of the supporting affidavits." *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826 (citing *Plourde v. Plourde*, 678 A.2d 1032, 1035 (Me. 1996)).

In this case, the undisputed evidence of record establishes that prior to the commencement of the foreclosure action, Defendants were in default, and the Defendants' outstanding indebtedness to the Bank was approximately $2.9 million. It is also uncontroverted that the Bank placed the sole bid at the foreclosure sale, and that the Bank obtained the property for $1.5 million. The record, therefore, plainly establishes a deficiency of more than $1 million.[2]

Defendants nevertheless contend that an attachment is not warranted because the Court should void the sale because the Bank did not conduct the foreclosure sale in accordance with the applicable statute. More specifically, Defendants argue that the Bank did not conduct a "public" sale as required by 14 M.R.S. § 6203-A (2012). In support of their contention, Defendants submitted affidavits from three individuals who appeared at the sale, but were not permitted to enter the room in which the sale occurred. None of the three individuals intended to bid on the property.

Preliminarily, even if Defendants established that the Bank did not satisfy the statutory requirements for the sale of the property, the Court is not convinced that the appropriate remedy would be to void the sale. In *Keybank National Association v. Sargent*, 2000 ME 153, ¶ 23, 758 A.2d 528, 536, the Law Court wrote, "[w]hen the challenge is to the procedures used to conduct the foreclosure sale, the proper analysis for the trial court is whether it would be equitable to set

---

[2] For purposes of the Bank's request for attachment, the Court finds the sale price of the Property to be most relevant to the Court's determination as to the amount that the Bank is likely to recover. Therefore, the Court did not consider the supplemental affidavit of Alvin W. Butler and thus dismisses Defendant Reeves Motion to Strike the supplemental affidavit of Alvin W. Butler as moot.

3

aside the sale given the procedures that were employed by the mortgagee." At least at this stage of the proceedings on the current record, the Court is not persuaded that the equities are such that it is likely that the sale will be set aside. Among other things, the record is devoid of any persuasive evidence to suggest that Defendants would have retained the property had the Bank conducted the sale in another manner.

The Court recognizes if the Bank did not satisfy the statutory prerequisites to the sale, the Court could possibly reduce or eliminate any deficiency to which the Bank believes it is entitled. However, the current record contains no persuasive evidence that the sale could have or should have generated a higher price for the Property. While Defendants contend that the sale was not public because several individuals were prevented from attending the sale, Defendants have presented no evidence of the exclusion from the sale of any potential purchaser of the Property. In other words, there is no evidence from which the Court could conclude that a party was prevented from making a higher bid on the Property than the Bank's bid of $1.5 million. Accordingly, the Bank has established that it is more likely than not that it will recover judgment in the amount of the deficiency.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that the Bank has established that it is more likely than not that the Bank will recover judgment in the amount of $1,090,567.45, and that there are no liability insurance, bond or other security, and any property or credits attached by other writ of attachment or by trustee process shown to be available to satisfy the judgment. Accordingly, the Court grants the Bank an attachment and attachment on trustee process on the property of the Boothbay Country Club, LLC, and James R. Reeves in the amount of $1,090,567.45.

4

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 6/27/13

_____
Justice, Maine Business & Consumer Court

Entered on the Docket: 6·28·13
Copies sent via Mail __ Electronically ✓

**BCD-CV-13-18**

**THE BANK OF MAINE, F/K/A, SAVINGS BANK OF MAINE,**

**V.**

**BOOTHBAY COUNTRY CLUB, LLC ET AL**


**The Bank of Maine**
David Soley & Jay Geller, Esqs.
Bernstein Shur
100 Middle St.
Portland ME  04104

**Boothbay Country Club, LLC**
Sumner Lipman, Esq.
Lipman & Katz P.A.
227 Water St
Augusta ME  04332

**James Reeves**
George Kurr & Joseph Bethony, Esqs.
Gross, Minsky Mogal PA
23 Water St, Suite 400
Bangor ME  04402

**PGC1, PGC2 & Paul Coulombe**
Andrew Sparks, Esq.
Drummond & Drummond
One Monument Way
Portland ME  04101